Milo C. Scott, Appellee, v. J. C. Ferguson Realty Company, Incorporated, Appellant.

November 13, 1928.

*W. C. Hoffmann,* for appellant.

*Strock, Cunningham, Sloan & Herrick,* for appellee.

De Graff, J.—Plaintiff seeks to recover on an oral contract with the defendant (appellant) a commission for the sale to one Robert Donaho of a certain parcel of real estate owned by appel-

lant. Both parties to this action are engaged in the real estate business in Des Moines. It appears that plaintiff had inserted an advertisement in a local newspaper, stating that he had a buyer who wished a certain type of house. The defendant answered by telephone, and requested the plaintiff to bring his prospective purchaser to the defendant's office. This was done, and after negotiations of one and a half hours, a written instrument entitled "Offer to Buy," bearing date December 29, 1926, and addressed to "J. C. Ferguson Realty Co., Inc.," was drafted by appellant, and signed by the "J. C. Ferguson Realty Company, owner, by J. C. Ferguson, Pres."

The writing, *inter alia*, contained the following:

"We hereby make you the following offer for your property located or briefly described as follows: House like one on Lot 40 Shawnee Park to be placed on Lot 75 Shawnee Park with basement garage for 2 cars, paying you as follows: Total price of property $6,600 payable $400 stock in Corn Belt Inv. Co., with this offer, $——— when final contracts are signed and the balance of $6,200 as follows, to wit: $500 cash when house is completed and $5,700 at rate of $60 per mo., including interest at 6½%. Interest to begin the date of possession. All special street assessments, levies, are to be paid for in full by owner."

It was further provided that the abstract should be continued to the date of the contract, showing merchantable title, free and clear from all taxes, assessments, liens, and incumbrances, except building restrictions, and the purchaser to pay all taxes and assessments levied on or after the date of acceptance hereof. It was further provided that all adjustments of interest, rents, and insurance were to be made as of May 1, 1927, when possession was to be given. It was further provided that plans and specifications were to be submitted and approved "before construction is commenced." Another clause provided:

"It is understood that no representations made by the agent in the negotiations of this sale are being relied upon unless incorporated hereon in writing."

Other clauses read:

"Roller shades, screens, and electric fixtures are to be left

with the house. Final contracts are to be drawn on forms used by J. C. Ferguson Realty Company, Inc., a blank of which is attached hereto. When this offer is accepted by the owner it shall thereupon become a binding contract between purchaser and owner for the purchase and sale of said property upon the above terms. It is agreed by and between the parties hereto that in the event either party fails to fulfill his part of the proposition after the same has been accepted, then the party failing to do so shall pay the regular commission in full.''

Robert Donaho, the purchaser named in the writing, signed the writing, and turned over to Ferguson four shares of Corn Belt Investment Company stock, valued at $100 per share.

At the time of the negotiations in Ferguson's office between plaintiff, defendant, and Donaho, Ferguson said to Donaho, as testified by plaintiff:

''I want you to make an agreement. We will first use a buyer's offer, and of course we have the plans of that house, because we have built several just like that; but we do not want to build two houses on the same street with the same outside,— the same exterior,—so you take your wife and look at another house that I built, and if the outside of that house is all right, then we will go right to work on it, because we know just what we can do.''

It was at this point that the ''offer to buy'' was prepared and signed by the defendant, and at this time, Ferguson said to Donaho: ''You look at that place, and if that suits you, come in and pay $400.'' Donaho testified that the writing was signed at the time of the preliminary negotiations, but Ferguson testified that ''the contract was not signed by Mr. Donaho at that time.''

Plaintiff claims that the defendant orally agreed to pay him 5 per cent, or $330, commission. The defendant denied this agreement, and testified that the sale price was $6,500 net to him (Ferguson Realty Company), and that the commission due plaintiff was, therefore, $100. The primary contention, however, of the appellant in this court is that the signed written offer to buy was only a preliminary agreement, and not a contract at all. In brief, and in his own language, the written instrument ''doesn't mean a thing. I used that preliminary agreement to get Donaho something to make him feel we both meant business.

We were going to try to get together. We didn't get together."

This is the crux of this case. The question is: Did the parties definitely agree upon the subject-matter of the sale and. the terms? Did the transaction rise no higher than preliminary negotiations looking toward the purchase of a house? Was there or was there not a meeting of the minds of the parties?

The facts disclose that a house was built for Mr. Donaho on the lot described in the written instrument, and he was living in that house upon the date of the trial of this case. The certificates of stock delivered by Donaho as his initial payment were never returned, and the record does not disclose that the signed offer to buy was ever formally canceled. Ferguson testified: "I don't know whether we ever agreed to cancel this contract,— we just couldn't agree to what it meant."

The evidence does disclose that a contract for the sale of the identical property was made between Donaho and one Hugh Gibson, who was a contractor employed by the defendant realty company to build houses on lots owned by the realty company. This contract is not in evidence. Ferguson, president of the defendant realty company, testified that: "We sold it [Lot 75, Shawnee Park], January 11, 1927, to Hugh Gibson, but the contract is not recorded." It is further disclosed that, in May, 1927, after the claimed sale was made to Gibson, the defendant placed a mortgage on the property, and had Donaho sign a waiver for the mortgage, but did not have Gibson sign it.

These are the salient facts, and the submitted and submissible issues are: (1) Was there an agreement between appellant and appellee whereby the appellant agreed to pay appellee a commission for finding a purchaser of the lot in question? (2) Did the appellee procure one Donaho as a purchaser of said lot? (3) Was there a sale by the appellant to Donaho of said lot? (4) What was the quantum of commission agreed upon?

Clearly, there was a jury question to determine whether the appellant orally agreed to pay the appellee a commission for finding a purchaser, and it was for the jury to determine the terms of the oral agreement, if one was made.

There can be no question, under the evidence, that the appellee did bring Robert Donaho as a prospective purchaser to the appellant. This brings us to the question involving the meaning of the written "offer to buy," signed by both parties.

Appellant says it is a meaningless thing,—a writing that was purely preliminary, and without legal efficacy. A contract is an enforcible agreement. It creates an obligation. If this is not true, it is a *nudum·pactum*. Furthermore, a contract already in writing is none the less obligatory on both parties because they intend that it shall be put in another form. 13 Corpus Juris 292. The instant appellant was not in a position to defeat the claim of the agent for his commission by refusing to enforce his contract against the buyer, or by releasing the buyer from the obligations of his agreement, if it was legally enforcible. *Duke v. Graham*, 163 Iowa 272; *Lunney v. Healey*, 56 Neb. 313 (76 N. W. 558); *Ward v. Cobb*, 148 Mass. 518 (20 N. E. 174, 12 Am. St. 587).

The appellant was the owner of the lot in question. There was an offer and an acceptance of a proposition, and, so far as the immediate parties are concerned, the terms of the written agreement were attempted to be consummated, and were, in part at least, consummated. An agent is entitled to his commission, without regard to whether the terms of a contract are subsequently performed by the purchaser. *Nagl v. Small*, 159 Iowa 387. The making of an executory contract between the owner and a purchaser furnished by the agent *per se* brings into being the right of the agent to a commission. Subsequent dealings with respect to the property between the owner and a third party do not affect the right of the agent to a commission, when the agent is shown to have procured a purchaser with whom the owner has entered into a contract of sale. *Nagl v. Small*, supra. We are not here dealing with a listing agency contract, or with the right of an owner to sell his own property, independently of such agency. See *Hedges Co. v. Shanahan*, 195 Iowa 1302.

In the instant case, the essential terms of the written instrument signed by the contracting parties were carried out, with the exception that Donaho subsequently purchased from Hugh Gibson, the defendant's contractor, the real estate involved in the original agreement. The jury could have found, under the evidence, that Gibson had no real interest in the property, and that the alleged sale to Gibson was a plan to defeat the right of plaintiff to his commission. In other words, the jury could have viewed Gibson (not produced at the trial) as a "straw man" purchaser. It is undisputed that the appellant invited Donaho,

in the first instance, to go with Mrs. Donaho for the purpose of looking at a similar house, and if the house suited him, Donaho could sign the contract and return it to Ferguson. This was done, and Donaho turned over to Ferguson the initial stock payment, in the sum of $400. It will also be observed that the "offer to buy" signed by the parties recites that the house to be built on Lot 75 is to be "like one on Lot 40," but "with basement garage for 2 cars." It will also be observed that the contract does not provide that plans and specifications must be submitted and agreed upon before there is a sale, but "plans and specifications to be submitted and approved before construction is commenced." The undisputed testimony shows that plans and specifications were discussed by Scott, Ferguson, and Donaho before the "offer to buy" was prepared and signed by Ferguson, and that these were the plans and specifications of the house on Lot 40 which Donaho was to inspect, and did inspect, before he signed the contract of purchase. As a matter of fact, no other plans or specifications were ever furnished.

Ferguson, as president of the defendant company, wrote this contract, and it is apparent that there existed in the minds of the contracting parties no thought of any material changes from the model or pattern house on Lot 40, except "basement garage for 2 cars."

We cannot accept the legal conclusion of the defendant company, through its president, that the written instrument was and is a legally meaningless thing, and that no contract was intended at all. On the contrary, we reach the conclusion that the minds of the parties did meet, both as to the subject-matter and as to terms, which included price, initial payment, monthly payments, interest rate, special assessments, general taxes, abstract, liens, incumbrances, building restrictions, rents, insurance, possession, and fixtures. The written instrument in question was mutually understood, agreed on, and signed. It was an obligatory agreement, and must be presumed to contain the terms of the oral negotiations which were had immediately preceding its drafting and signing. The case of *Des Moines Marble & Mantel Co. v. Seevers*, 201 Iowa 642, is distinguishable from the case at bar on the fact side.

Appellant complains of the rulings of the trial court in excluding evidence offered by the defendant to explain Exhibit A

1164

(offer to buy) on the theory that it is a mere preliminary agreement. It is obvious that this testimony, to which objections were sustained, had to do with transactions between the appellant and Donaho after the execution and delivery of the "offer." The deal was completed when the signatures were attached to the written agreement, which agreement is the best evidence of the transaction between Donaho and the defendant realty company. The agreement spoke for itself, and by the terms of that writing, the appellee, although not mentioned by name, was a party who had a beneficial interest therein.

It will be remembered that this agreement recites that, in the event that either party (appellant or appellee) fails to fulfill his part of the terms after the acceptance of the same, "then the party failing to do so shall pay the regular commission in full." Who failed to do his part? Could the appellant ignore the appellee's right by making another sale of the property, and thereby permit that party to enter into a new contract of sale with the original purchaser? We think not.

The instructions given by the trial court are in harmony with the law applicable to the. record facts. We discover no error. The judgment entered is—*Affirmed*.

STEVENS, C. J., and ALBERT, MORLING, and WAGNER, JJ., concur.