MARVIN J. SANDS et ux., appellants, v. FRED J. HARMS, appellee.

No. 51602.

(Reported in 135 N.W.2d 544)

JUNE 8, 1965.

William S. Sturges, of Le Mars, for appellants.

Morse Hoorneman, of Le Mars, for appellee.

STUART, J.—Vendees in a real-estate contract brought this action against vendor to recover an amount alleged due them under the settlement reached in the agreement to rescind. After having made some payments, the vendees became delinquent and wanted out of the contract. Vendor agreed to cancel the contract and enter into a new contract with a third party procured by vendees' real-estate agent. The dispute is over the distribution of the down payment made by third party.

Vendor claims vendees and their agent agreed to pay him $1000 plus amounts owing for insurance and taxes in the sum

of $352.68. Part of the $1000 was to pay interest and principal due on a first mortgage. Vendees claim they were to receive their full equity. Final settlement was made through vendees' real-estate agent. He computed the amount due vendees and furnished figures supporting the amount distributed to them. Later on they examined the figures and concluded they were about $1200 short of the expected sum. When they confronted the agent with this claim, he became angry and tore up the paper.

The trial court placed the responsibility for the misunderstanding on vendees' agent. He found vendor had agreed to cancel the contract upon receipt of $1352.68 which was agreed to by the agent and that if vendees were entitled to any additional money it was due from the agent, not vendor.

Vendees assign two errors, both of which relate to the sufficiency of the evidence to sustain the trial court's findings. As this was tried as an action at law, we must affirm if there is substantial evidence to support the trial court. No citation of authority is necessary, rule 344(f)1. We find such evidence in the record.

Vendor testified: "About January 10, 1962, I had a conversation with Mr. Glass [real-estate agent] and Mr. Sands [vendee] about selling the farm. They made the price of $1000 plus taxes and insurance and I told them I would take it. I just wanted to get the thing over and get plaintiffs off the hook and I figured maybe the other fellow would do better."

On cross-examination, he testified: "In January of 1962 I did not make any agreement with plaintiffs that plaintiffs' equity was in the sum of $3333.50; and I did not ever make any agreement with plaintiffs as to what the amount of his equity in the farm was. Mr. Sands and Mr. Glass came over to my place and made this offer to me of $1352.68; we never talked about what they computed the different equities of the parties to be and we did not talk about a lump sum settlement as to what my equity and Mr. Sands' equity was either."

He is supported by Mr. Glass, the agent, who testified: "Right after that I made a proposition to Morse Hoorneman [vendor's attorney] to pay the taxes and pay the insurance, and

give defendant $1000, but out of that $1000 must have came; I believe, it was back interest, and plus the payments to Connecticut then which was not paid."

This evidence is sufficient to support the trial court's findings and the case is therefore affirmed.—Affirmed.

All JUSTICES concur.