DONALD E. WHITE, appellant, v. ELLA MILLER, appellee.

No. 52138.

September 20, 1966.

Gill & Huscher, by Paul E. Huscher, of Des Moines, for appellant.

Herrick, Langdon, Sandblom & Belin, by Philip C. Lovrien, of Des Moines, for appellee.

SNELL, J.—This is an action at law to recover a real-estate commission claimed due plaintiff, a broker, for procuring a prospective purchaser for a house owned by defendant. Trial to the court resulted in judgment for defendant. Plaintiff has appealed.    *

The findings of fact by the trial court if supported by substantial evidence are binding on us. Citation of authority is unnecessary. Sands v. Harms, 257 Iowa 1050, 135 N.W.2d 544; rule 344(f)1, Rules of Civil Procedure.

The trial court found that plaintiff had failed to prove his right to recover. We find no reversible error.

Plaintiff, a resident of Des Moines, is a licensed real-estate broker.

Defendant, a resident of New York, is the record owner of the Des Moines property involved in this action.

The evidence consisted of exhibits and the testimony of two witnesses, plaintiff and defendant's husband.

Defendant's husband testified that he had contributed to the purchase price of the property, and with his wife's knowledge and consent and coincident with discussion with her, handled the negotiations incident to the proposed sale. It should be kept in mind that his testimony was offered by his wife, defendant herein, and his authority has not been questioned by her.

Defendant's property was listed for sale with an agency other than plaintiff. Through a multiple exchange agreement

plaintiff observed the listing and attempted to sell the property. Plaintiff received an offer to buy from Michael Colacino and Maxine R. Colacino. The price and terms of sale under which the property was listed for sale do not appear. There is no claim that the offer to buy was an acceptance of the listing terms.

The offer to buy was in writing (on a printed form) and was dated October 17, 1962, and was signed by Michael J. Colacino and Maxine R. Colacino. It offered a purchase price of $18,750 payable $100 with the offer, $2900 upon acceptance of the offer "and the balance by, (a) executing a formal contract for the purchase of said property" providing for payment of the remainder at the rate of $119 per month, including interest at six percent per annum. The seller was to pay all taxes due and payable in 1963. The offer contained a provision for payment of a commission to the agent by the seller. It also contained many other provisions not material to the problem before us.

The $100 payable with the offer was delivered to plaintiff.

Plaintiff contacted the listing broker, made arrangements for contact with defendant by telephone and mailed two copies of the offer to defendant in New York.

Defendant replied by letter "We have studied your offer for sale of the house and it is in no way compatible with our desires and wishes. * * * We will be unable to accept the offer. * * *."

Plaintiff then wrote defendant as follows:

"Dear Mrs. Miller:

"Received your letter this A.M., and realize after reading it that perhaps we should start somewhat over.

"I am mailing the offer back to you, and make the request, please call me person-to-person at your convenience, so that I may discuss the possibilities of getting together.

"To my knowledge at this time you have six factors in the area that you have to consider.

"It is always difficult for a full understanding when we are so many miles apart.

"Hoping I may have the pleasure of hearing from you very soon.

"Sincerely yours,
"/s/ Donald E. White
"Donald E. White"

This was followed by a telephone conversation with four people participating, i.e., plaintiff and the listing agent in Des Moines and defendant and her husband in New York. Defendant was asked to "counter the offer on the reverse side" and mail it back. Defendant wrote on the back of the offer:

"I will accept a price of $19500 for the property with down payment as indicated in this contract and payments of $119 per month so long as there is a balance due, taxes will be pro-rated through the month of which the sale is consummated.

"The balance of payment will be carried on 5% loan basis through the life of the contract.

"The buyer agrees to pay all taxes and insurance from date of sale.

"The buyer further will accept the property in an 'as in condition.'

"Mrs. Ella Miller"

and returned it to plaintiff. Plaintiff then obtained an endorsement as follows: "I accept this offer on this 10-27-1962 Michael J. Colacino." Mrs. Colacino did not sign the endorsement. The $2900 called for upon acceptance has never been paid.

As to an intervening conversation by telephone defendant's husband testified:

"I stated to Mr. White, 'We have returned this offer to you once before and told you it was not acceptable. You have returned it back to us. It is still not acceptable because it is still the same contract.' Mr. White said, 'What do you want?' I said 'Mr. White, this is the way we will sell the property. First we want $19,500 for this property. I want the taxes which I have paid this year for the full year refunded to me for two months. I want the sale consummated by the first of November, because the house has not been winterized and I want this thing clear. I want the two months' tax that I have paid for this year refunded to me.' "

Plaintiff prepared a formal real-estate contract with several copies. The contract forms were submitted to defendant, her attorney and the proposed buyer. None was signed. The terms were not in accord with the former writings or anyone's testimony.

It is apparent that there never was a mutual understanding of the various proposals; that the proposed buyer never accepted the offer as proposed and understood by plaintiff, never made the payment of $2900 required on acceptance of plaintiff's offer, and no one signed the contemplated formal contract providing therefor.

Plaintiff caused the abstract of title to be continued and examined.

There were subsequent letters between the parties and conferences with attorneys but the parties never came to any final agreement and the sale was never consummated.

Plaintiff returned the initial $100 payment to Mr. Colacino. Plaintiff demanded his commission from defendant and not being paid brought this action.

The trial court in extensive findings of fact found among other things that the offer to buy contemplated the execution of a real-estate contract setting forth the agreements; that the various proposals differed; that there was no agreement as to payment and refund of taxes; no acceptance of defendant's offer by Mrs. Colacino, one of the proposed buyers; no payment of the $2900 as required; no contract in accord with the various requirements and that plaintiff had failed to prove the allegations of his petition.

I. Throughout the trial plaintiff objected to the testimony of defendant's husband as hearsay, no agency having been established. The testimony was admissible. Instructions given plaintiff by the witness did not constitute hearsay. The witness was testifying to what he had said and not what someone else had said. Plaintiff testified about negotiations in which defendant's husband participated. Plaintiff mailed a letter to defendant saying:

"Mr. and Mrs. Miller:

"I wish to thank you both very much for the opportunity for the sale of your property in Des Moines, Iowa."

A copy of this letter was offered as an exhibit by plaintiff.

The testimony of defendant's husband was offered by defendant. His right and authority has never been challenged and there is no question of agency involved.

II. This is not a case involving an original listing agreement between plaintiff and defendant wherein the sale terms were specified. There was no original broker and client relationship. Through what plaintiff refers to as a "multiple listing" with another broker plaintiff learned that the property was for sale. He had prospective buyers (husband and wife) who made an offer. The offer was rejected. A counteroffer found by the trial court to be incomplete and without mutual understanding as to the contemplated terms of sale was made and accepted by one of the original offerors. Neither party ever accepted what the other had in mind. The written offer contemplated the execution of a formal contract but the formal contract as prepared was never agreed to. The various documents show misunderstanding as to payment of taxes. The original offer to buy and the counteroffer to sell provided for the payment of $2900 "upon acceptance of this offer" and further provided "In the performance of each part of this agreement, time shall be of the essence." The $2900 was never paid nor tendered.

III. The law governing the right of a real-estate broker to a commission has been well settled and consistently followed. In Nagl v. Small, 159 Iowa 387, 389, 390, 138 N.W. 849, the authorities were reviewed and the varying situations considered. We said:

"If he undertakes to dispose of his principal's property on specified terms and effect a completed sale, then we have said that the agent is not entitled to his commission, although the purchaser proposed by the agent enters into a contract with the owner which he subsequently is unable to perform. [Citation]

"On the other hand, if the agent undertakes to find a purchaser who shall buy on specified terms and conditions, he is entitled to his commission when he produces a purchaser who is ready, willing, and able to buy on the terms and conditions proposed, even though the owner refuses to enter into any binding contract with the proposed purchaser. [Citations]

"Even though the seller and the purchaser enter into a

tentative agreement as to the terms of the sale, if a condition precedent to the contract's taking effect, such as a present cash payment, is not performed by the buyer, then the agent is not entitled to this commission, for the purchaser is not ready, willing, and able to make the purchase on the terms proposed. [Citations]

"It is well settled that when the agent proposes a purchaser acceptable to the owner, who makes with him a binding contract providing for the terms and conditions on which he shall have a conveyance of the property, nothing remaining as between them save the performance by such accepted purchaser of the terms and conditions of the contract thus entered into, the agent becomes entitled to his commission. * * *."

The extent to which the several rules set forth in Nagl have been followed is discussed in Nickelsen v. Morehead, 238 Iowa 970, 29 N.W.2d 195. See also Pond v. Anderson, 241 Iowa 1038, 44 N.W.2d 372.

In the case now before us the problem is mainly factual and the trial court as trier of the facts found against the plaintiff. The finding is supported by the record. It appears without question that the cash payment was a condition precedent to the contract's taking effect. It was not paid. The other particulars wherein the court found plaintiff had failed to prove his case need not be discussed. They are supported by the record.

IV. Plaintiff argues that the failure of the proposed buyer to make the $2900 down payment was not raised by the pleadings and was outside the issues. We do not agree. The burden of proof was on the plaintiff to prove that he had procured a purchaser "ready, willing, and able to make the purchase on the terms proposed." Nagl v. Small, supra. In addition to various affirmative defenses the defendant specifically denied each of the material allegations of plaintiff. The matters precedent to plaintiff's right to recover, including the down payment, were within the issues.

V. Other matters argued on submission are subservient to the main issue. They have been considered but need not be discussed. We find no reversible error.

The case is—Affirmed.

All JUSTICES concur.