WAYNE E. AKKERMAN, appellant, v. DONALD GERSEMA et al., appellees.

No. 52485.

(Reported in 149 N.W.2d 856)

April 4, 1967.

Carroll Wood, of Webster City, for appellant.

Hemingway, Hemingway & Myers, of Webster City, for appellees.

Larson, J.—Plaintiff, Wayne E. Akkerman, in a declaratory judgment proceeding brought May 12, 1965, sought to construe a written lease entered into between himself and the defendants,

Donald Gersema and Mervin W. Hoke, and to recover from defendants the sum of $1600 as unpaid rent for the months of April and May 1965, on premises in Webster City, Iowa, used for a bowling and restaurant business. Defendants' resistance admitted the execution of the lease, but alleged it was entered into by mutual mistake or by the mistake of defendants and the fraud of plaintiff in concealing knowledge thereof. By amendment to answer filed at the close of all evidence, defendants requested that the lease be reformed to provide a lower rental for the month of June, as intended by the original agreement between the parties. The trial court dismissed plaintiff's petition and reformed the lease agreement to provide the lower rental for June of each year. Plaintiff appeals. We affirm.

A brief statement of the case seems necessary at the outset in order to understand the issues and the contentions of the parties. It appears early in 1963 defendants desired to purchase a bowling alley business and were shown several, including the one involved herein, by William Reece, a real-estate broker residing in Iowa Falls, Iowa. Mr. Reece represented the plaintiff in all these negotiations, which commenced on or about March 1, 1963.

Plaintiff was asking a rental of $800 per month for the premises throughout the year, which was not acceptable to the defendants. Mr. Reece then presented to defendants an instrument entitled an "Offer" which he had prepared, the first three pages of which became Exhibit "A" in this suit. In this offer the monthly rental was listed at $800, but included therein was a provision which stated plaintiff would put 10 percent of the yearly rental back into the building and grounds as repairs and upkeep. Defendants refused to sign this offer, asserting (1) the $800 per month rental was too much and (2) the upkeep provisions would give rise to disputes and arguments as to its expenditure.

During the negotiations there were discussions regarding the lowering of rent for the months of June, July and August, because they were the lean months for this type of business. Thereafter Mr. Reece had his attorney prepare an amendment, which was attached to the "Offer" and appears as page 4 of Exhibit "A". This amendment changed (1) the date of possession and

provided the first rental payment was to be July 1, 1963, and (2) the monthly rental of $800 was to be reduced to $300 per month during the months of June, July and August of each year of the ten-year lease. This amended offer, dated March 19, 1963, having already been signed by plaintiff, was then signed by defendants. At that time they delivered their $5000 check to plaintiff's agent, Mr. Reece, to bind the deal. Mr. Reece testified, on the basis of Exhibit "A" plaintiff paid him his commission, although this was prior to the execution of the lease which is the subject of this controversy.

Although plaintiff contends there were further negotiations between the parties before the lease was executed, defendants denied it. Mr. Reece testified that to the best of his knowledge "there were no other negotiations between the parties between the signing of this Offer as amended, and the signing of the final Lease, dated April 29. That prior to this, all negotiations had been going through him." In any event plaintiff's scrivener prepared the lease, Exhibit "1" herein, which was signed by both parties on April 29, 1963. Although defendants and their attorney looked over the lease before defendants signed, they failed to notice that the reduced rent period included only the months of July and August. It appears plaintiff's signature was acknowledged in Webster City, Hamilton County, and the lease was then rushed to Greene, Butler County, by Mr. Reece for defendants' signatures and acknowledgment.

It further appears defendants took possession of the premises on July 1, 1963, and paid $300 per month rent for July and August and $800 per month thereafter until June 1, 1964, when a check of $300 for June rent was objected to by plaintiff. Defendants then paid an additional $500 under protest and deducted $250 per month from the rent for the months of April and May 1965. This suit followed.

As the trial court found, the sole question involved in this appeal is whether the lease, Exhibit "1", should be enforced pursuant to its terms or be reformed pursuant to the terms of Exhibit "A", in particular to the monthly rental for June of each year. Although it did not specifically rule upon defendants'

Motion for Leave to Amend the Answer filed March 15, 1966, at the close of all evidence, it is clear that leave was granted.

In its conclusions of law the trial court correctly recognized that contracts may be obligatory on both parties even though all parties intend that the same shall be put into another form (Scott v. Ferguson Realty Co., 206 Iowa 1158, 1163, 221 N.W. 785); that equity will reform a written contract in the absence of doubt or ambiguity where mistake is alleged and shown (Hausbrandt v. Hofler, 117 Iowa 103, 90 N.W. 494, 94 Am. St. Rep. 289); that equity may reform a contract when the same does not accurately contain the terms of the agreement between the parties (Milligan Co. v. Lott, 220 Iowa 1043, 1045, 1046, 263 N.W. 262, 263); that if a clause is inserted (or omitted) in a formal agreement by mistake on the part of the seller or the scrivener, then the same is a mutual mistake because it is contrary to the real agreement of the parties; that if inserted (or omitted) by design, it would be without consideration and fraudulent (Betz v. Swanson, 200 Iowa 824, 827, 205 N.W. 507).

As to defendants' failure to carefully read the lease before they signed it, the trial court referred to Betz v. Swanson, supra, at page 828 of 200 Iowa, and Snyder v. Ives, 42 Iowa 157, 162, where it is said: "The law requires only reasonable diligence, and requires this to the end that culpable negligence may not be encouraged." This statement was recognized and reaffirmed in Wallace v. Spray, 248 Iowa 100, 107, 78 N.W.2d 406. The court further held, in cases such as this where even though there was a full opportunity to examine the contract in question, the defendants had a right to rely upon the agreement, Exhibit "A", as to what the terms of that final draft would be. It then reformed the lease, Exhibit "1", by striking from paragraph 2 thereof the words and figures "$300.00 per month for the months of July and August of each year and $800.00 per month for September through June of each year", and inserting in lieu thereof, "$300.00 per month for the months of June, July, and August of each year and $800.00 per month for September through May of each year."

Appellant contends (1) that the evidence does not show there was a mutual mistake as to the terms and conditions of the

438

lease agreement (2) that it does show a mutual mistake as to the terms of the Offer and Amendment to Offer (3) that the written lease embodied and combined the terms of a prior writing and oral discussion, was the entire agreement, and became conclusive as to the rights of the parties (4) that the court could not properly grant relief on an amendment to answer, filed after all evidence was in, which changes the issues, defense and cause of action before it, and (5) that a person who enters into a written contract cannot avoid its terms by failure to read the instrument before signing it. We do not agree as to (1), (2), (3) and (5), and although as a proposition No. (4) is correct, the evidence here does not show the amendment to answer substantially changed the issues or the relief asked.

■ I. The legal principles governing a declaration of rights under a written instrument and as to reformation of such instruments are not in dispute in this suit. One who contends a writing does not express the real agreement between the parties or who seeks reformation of a contract has the burden of establishing his contention by clear, satisfactory and convincing proof. Wallace v. Spray, supra, 248 Iowa 100, 103, 78 N.W.2d 406, and citations. We pointed out therein that this requirement is a safeguard, to prevent the courts from making contracts for the parties rather than making the written instrument, which is the subject of the controversy, speak the true contract, and that this and only this is the equitable relief afforded by a reformation.

■■ In Betz v. Swanson, 200 Iowa 824, 826, 205 N.W. 507, 509, this court said equity will reform a written instrument upon the ground of mistake occurring at the time the instrument was prepared, only when such mistake is mutual, and pointed out the necessity of mutual mistake arises out of the inability of the court to make a contract for the parties. Thus, if a reformation is desired, a mutual mistake must be shown. If the mistake is all on one side, then there was no meeting of the minds and the relief would be contract cancellation. Basically then, as defendants relied upon mutual mistake or fraud, they were required to prove a definite contract and a mistake in order to secure relief in equity. The remedy then may be reformation or cancellation,

depending upon the evidence as to mutuality. By amendment to defendants' answer they asked reformation.

II. While it is true a pleading amendment under rule 88, Rules of Civil Procedure, should not be allowed if it materially changes the issues involved, we are not convinced defendants' amendment to their answer does more than ask correction of a mistake by reformation. It seems clear a declaratory judgment action seeking a declaration of the rights of the parties to a contract, relief in the form of reformation, can be claimed defensively and will be granted if the proof produced justifies that relief.

In Metropolitan Casualty Ins. Co. of N. Y. v. Friedley (1948), 79 F. Supp. 978, 982, the court said: "Although the defendants in this case did not specifically request reformation in their pleadings, if they have pleaded and proved facts justifying reformation such relief may be granted. * * *." Equity attempts thereby to reach the right and just result. Defendants here have pleaded and proven facts which would justify reformation, and we conclude the court committed no error in permitting and considering the defendants' amendment asking reformation.

III. As we have indicated, the first prerequisite necessary to obtain reformation of an instrument such as we have here is a showing by clear and satisfactory proof of the existence of a definite contract between these parties, a meeting of minds as to what were to be the terms of the subsequent written agreement. Although it appears there is some conflict in the oral testimony of these parties as to what were the terms of the agreement which were incorporated in the "Offer", Exhibit "A", we are satisfied they were correctly recited therein. Appellant's contention that a mistake was made in that written agreement fails for the want of proof. He testified that only two summer months' rentals were to be reduced $500 each, which would account for the $1000 overall yearly rental reduction, in lieu of lessees' promise to maintain the building and grounds. However, appellees deny that was the basis of the reduction, stating that it was specifically rejected, and that this reduction was made because of the lack of business in the summertime. They testified that in this business it was

necessary to have a substantial reduction in rental for June, July and August of each year, and that this was a usual and general provision in leases of this nature.

In such a situation the circumstances surrounding these transactions and the relative reasonableness or unreasonableness of the respective versions are properly considered, and often they furnish a very satisfactory indication as to where the truth lies.

Except as to the basis of negotiations between these parties prior to the execution of Exhibit "A", there is little disagreement as to the facts. Appellant did not ask reformation of that contract, although perhaps he would be entitled to that relief if he did show that contract did not relate the real intention and agreement of the parties. We have carefully reviewed the testimony and exhibits produced in this regard and fail to find appellant, by clear and convincing evidence, has established that the written provision in Exhibit "A" providing that the monthly rental for June, July and August be $300 was not the actual agreement of the parties. We think it was.

IV. We come, then, to the issue as to the parties' intent in executing the lease, Exhibit "1". If the deletion of the month of June from those months listed for summer rental reduction was by mistake on the part of the appellant or of the scrivener who drew it, then the mistake was mutual because it was contrary to the real intention of the parties as expressed in Exhibit "A". If it was left out by design, it was without consideration and fraudulent. Betz v. Swanson, supra; 2 Pomeroy's Equitable Remedies, section 676. The remedy would be the same.

Of course, the right to reform an instrument is not absolute, but is within the sound discretion of the equity court and depends upon whether the remedy is essential to the ends of justice. Milligan Co. v. Lott, supra. We said therein the facts and circumstances must be such as constitute an effectual appeal to the conscience of the court and prompt it to interfere by reformation to mitigate the rigorous rules of law.

It is frequently held that all agreements made between the parties touching the subject matter of the contract, when reduced to writing, are presumed to be evidenced by such writing; and it is true in law proceedings it has often been held to be

the only evidence of the contract between the parties. Equity, however, assumes jurisdiction to reform the writing so as to make it conform to the true and real agreement between the parties. Here, as indicated in Division III, we are convinced the real agreement was to include June, July and August in the rental reduction period. Thus, unless defendants were somehow estopped by their failure to read Exhibit "1" carefully before signing it, the terms of that provision were subject to reformation.

V. It is the general rule that a party who has the opportunity to read a written agreement before he signs it and fails to do so is estopped in a proceeding to reform or cancel same. Houchin v. Auracher, 194 Iowa 606, 190 N.W. 3; Preston v. Howell, 219 Iowa 230, 257 N.W. 415, 97 A. L. R. 1140; Annotation 45 A. L. R. 701. However, as we pointed out in Wallace v. Spray, supra, 248 Iowa at page 107, 78 N.W.2d at page 410, this rule has its exceptions. In re Estate of Patterson, 199 Iowa 362, 202 N.W. 8; Betz v. Swanson, supra; Conrad v. Farmers Mutual Hail Ins. Assn., 223 Iowa 828, 273 N.W. 913. The statement, often repeated, in Snyder v. Ives, supra, at page 162 of 42 Iowa, is that the law requires only reasonable diligence, and in Betz v. Swanson, supra, 200 Iowa 824, at 827, it is said that if the clause was inserted in the deed by mistake on the part of appellant or of the scrivener who drew it, then it was contrary to the real intention of the parties' agreement. In Pyne v. Knight, 130 Iowa 113, 120, 106 N.W. 505, this court said: "* * * in any event she had the right in the absence of some evidence to the contrary to believe that her agent had correctly described the property so as to make it include only that which she desired and intended to sell. The deed was presented to her by her own agents upon whom she had a right to rely, and in signing it as presented, she was guilty of no such negligence as to deprive her of equitable relief on the ground of mistake."

Evidently the execution of the lease here was considered a formalizing of the agreement already consummated, and both parties so intended when it was signed. Indeed, Exhibit "A" provided: "* * * a lease therefor shall be executed for a ten (10) year period with an option to renew the lease for the fur-

ther period of ten (10) years with option to buy." Under the revealed circumstances we do not find culpable negligence in this signing, and believe both the error and failure to detect it were understandable. Defendants had a right to rely upon the terms settled by the previous agreement and the representation that the scrivener drew the lease in accord therewith. Evidently the scrivener neglected to note the inclusion of June in the reduction period because the commencement date of the lease he drew was July 1, and the mistaken deletion of June thereafter was not easily detected by the defendants or their counsel. It was a provision they rightfully considered settled. Not until the following June, when plaintiff called defendants' attention to the actual provisions of Exhibit "1", and attempted to hold defendants thereunder, did the discrepancy between the writings appear, at least to defendants. We hold under this record no such defendant negligence as would work an estoppel against them appears.

VI. Having found no error in the findings and conclusions of the trial court, its judgment reforming the lease, Exhibit "1", must be affirmed.—Affirmed.

All JUSTICES concur except THORNTON, J., not sitting.