**William L. MULLENGER, Appellee,**

v.

**Charles W. CLAUSE and Lorna J. Clause, Appellants.**

**No. 53924.**

Supreme Court of Iowa.

June 23, 1970.

Wetz & Cosgrove, Sioux City, and D. Howard Mallonee, Mapleton, for appellants.

Norelius & Norelius, Denison, for appellee.

MASON, Justice.

This is a law action tried to the court in which William L. Mullenger, a licensed real estate broker, seeks to recover from Charles W. and Lorna J. Clause, nonresident defendants, a commission for the sale of their real estate in Crawford County.

Defendants appeal from an adverse judgment.

Plaintiff alleged in one division of his petition an oral listing contract between the parties, performance on his part and defendants' refusal to perform. The other division is based on the theory of quantum meruit. In each division plaintiff asserts defendants are nonresidents and in each prayer asks that an attachment issue and that he have personal judgment against defendants. The Crawford district court entered an order directing property in the value of $1200 be attached.

■ An original notice with an attached copy of petition and order granting attachment was served on Mrs. Clause in Carroll County, Ohio, and service on Charles was substituted by serving his wife. The original notice, on a printed form, complied with requirements of rule 50, Rules of Civil Procedure. When a copy of the petition is attached, a general statement in the notice of the cause of action, the relief demanded, and if for money, the amount thereof, is not necessary. At the same time defendants were served in similar manner with notice of issuance of a writ of attachment and of levy against their Denison real estate. Code section 639.31.

Defendants appeared specially, challenging the court's jurisdiction because an extraterritorial personal service in an in personam damage action confers no jurisdiction over them.

Before the court's ruling on this special appearance, plaintiff amended his petition by striking the ad damnum clause for personal judgment from both divisions and substituting a prayer for judgment in rem against defendants' Crawford County property for the amount of commission claimed due.

No new original notice in the in rem action was served on defendants, either personally or by publication.

Defendants again contested the court's jurisdiction by appearing specially to the amended petition, asserting the reasons originally urged and the added ground that the original notices served on them in the in personam action conferred no jurisdiction in the subsequent in rem action.

The court ruled the first special appearance was made moot by plaintiff's amendment to his petition and overruled their special appearance to the amendment generally without observing requirements of rule 118, R.C.P. See Tice v. Wilmington Chemical Corp., 259 Iowa 27, 32–33, 141 N.W.2d 616, 620, opinion supplemented in 143 N.W.2d 86.

Defendants then filed answer denying generally the allegations of Division I, admitting only that plaintiff was a licensed real estate broker and they were nonresidents. They asserted as an affirmative defense that the contract alleged in said division was within the purview of the statute of frauds as contained in section 622.32,

Code, 1966, and was void—a contention not pursued on appeal. Answering Division II defendants denied generally each paragraph thereof, although in argument they admit plaintiff's status and their nonresidence. In answer to the amended petition they denied the prayer of each division.

I. In seeking a reversal of the judgment awarded plaintiff against them for a 3 percent commission on the contract sale price, interest and costs, defendants assign five errors relied on which they argue in two divisions.

In the first division they maintain the court erred in ruling in effect that the amendment to petition corrected any defect in the service of the original notice and petition and in failing to sustain their special appearance. They also contend the court erred in overruling their special appearance to the amended petition.

■ Defendants did not waive any alleged error in the court's order overruling their special appearance in proceeding to trial on the merits.

Rule 66, R.C.P., provides:

"A defendant may appear specially, for the sole purpose of attacking the jurisdiction of the court, but only before his general appearance. The special appearance shall be in writing, filed with the clerk and shall state the grounds thereof. If his special appearance is erroneously overruled, he may plead to the merits or proceed to trial without waiving such error."

In support of the grounds asserted in their special appearances that the original notice confers no jurisdiction upon the court either in rem or in personam, defendants argue jurisdiction over a nonresident defendant in an in personam damage action cannot be obtained by personal service outside the territorial jurisdiction of the court and service of an original notice which confers no jurisdiction over the person of the defendants is void and may not be revised or corrected by an amendment

to the petition to confer jurisdiction in rem.

■ Ordinarily personal service on a nonresident defendant outside this state confers no jurisdiction on courts of this state to enter personal judgment, such service being generally equivalent to publication, rule 64, R.C.P., and confers jurisdiction only in rem. Esterdahl v. Wilson, 252 Iowa 1199, 1204, 110 N.W.2d 241, 243. See also Bauer v. Stern Finance Company, 169 N.W.2d 850, 857 (Iowa 1969); Miller v. Farmers Cooperative Company, 176 N.W.2d 832 (Iowa 1970), filed May 5, 1970; and 72 C.J.S. Process, § 73.

■ An important distinction between proceedings in personam and in rem is that the purpose of a proceeding in personam is to impose through the judgment of a court some responsibility or liability directly upon the person of the defendant; whereas a proceeding in rem is aimed, not at the person of defendant, but at his property, status or some other thing within the power and jurisdiction of the court. Jurisdiction to render a judgment in rem is primarily founded on the presence of property in the state. Federal Land Bank of Omaha v. Jefferson, 229 Iowa 1054, 1058, 295 N.W. 855, 857–858, 132 A.L.R. 1282, and citations; Knoop v. Anderson, D.C.Iowa N.D. 71 F.Supp. 832, 840.

Defendants' assignment of errors argued in this division—an original notice which confers no jurisdiction over the person of defendants is void and may not be revised or corrected by an amendment to the petition to confer jurisdiction upon the court in rem—presents the question whether the court acquired jurisdiction effective to render judgment against defendants' property.

■ The only essentials to the exercise of the state's power to proceed against the property of an absent defendant are presence of the res within its borders, its seizure at the commencement of the proceedings and the opportunity of the owner to be heard. Pennington v. Fourth Nat.

Bank, (1917), 243 U.S. 269, 272, 37 S.Ct. 282, 283, 61 L.Ed. 713, 715, 1917F L.R.A. 1159. A glance at the citator will reveal the frequency with which this case has been relied on as authority.

Of these essentials the res was within the jurisdiction of the Crawford County court and was seized under attachment at the time of the filing of the petition. "But the mere seizure of property does not confer jurisdiction upon the court to proceed to judgment. * * * The seizure in a suit in rem only brings the property seized within the custody of the court, and informs the owner of that fact. The theory of the law is, that all property is in the possession of its owner, in person or by agent, and its seizure will therefore operate to impart notice to him. Where notice is thus given, the owner has the right to appear and be heard respecting the charges for which the forfeiture is claimed. That right must be recognized and its exercise allowed before the court can proceed beyond the seizure to judgment. The jurisdiction acquired by the seizure is, not to pass upon the question of forfeiture absolutely, but to pass upon that question after opportunity has been afforded to its owner and parties interested to appear and be heard upon the charges. To this end some notification of the proceedings, beyond that arising from the seizure, prescribing the time within which the appearance must be made, is essential. * * * The manner of notification is immaterial, but the notification itself is indispensable." 3 Freeman on Judgments, Fifth Ed., section 1530.

A similar point of view is expressed in comment b to section 34, Restatement, Judgments:

"Where the defendant is not subject to the jurisdiction of the court and the plaintiff seeks to reach property of the defendant and apply it to the satisfaction of his claim against the defendant, it is ordinarily necessary that the court should acquire jurisdiction over the property at the beginning of the action, since the court has no jurisdiction to proceed in the action where it has no jurisdiction over the defendant or over his property. Thus, if the plaintiff brings an action to recover money against the defendant who is domiciled in another State and the defendant is personally served with process outside the State in which the action is brought and thereafter property of the defendant within the State is attached, a judgment by default is void, not only where the judgment is rendered against the defendant personally, but also where it directs that the property attached be applied to the satisfaction of the plaintiff's claim. Where, however, the defendant is notified of the attachment and is given an opportunity to defend before judgment is rendered against him, a judgment thereafter rendered directing that the property attached be applied to the satisfaction of the plaintiff's claim is valid."

The illustration following the above quote is remarkably similar on facts.

This statement in 50 C.J.S. Judgments § 908, also bears on the question:

"* * * If the court has jurisdiction of the res involved or the status in controversy, it may render a judgment in rem against a nonresident on constructive or extraterritorial service, but such a judgment is valid or effective only as a judgment in rem.

"While actual notice or personal service of process is not required, some form of actual or constructive notice to all persons interested, or a voluntary appearance, is a necessary prerequisite to the rendition of a valid judgment in rem, and, in the absence of actual notice, there must be such published or constructive notice or proclamation as the law requires in the particular case, by which persons having interests to be affected are supposed to be informed of the proceeding."

In other words a method of notification must be employed which is reasonably calculated to give defendant knowledge of the attempted exercise of jurisdiction and an opportunity to be heard.

.

In this connection the distinction between proceedings in rem and quasi in rem is important in determining the sufficiency of the method of notice employed. This is so since a method of notification may be sufficient in the case of an in rem proceeding which would not be adequate where a quasi in rem proceeding of the second type is involved, as here.

This distinction is made clear in comment a, section 32, Restatement, Judgments:

"* * * Where a thing is subject to the power of a State, a proceeding may be brought to affect the interests in the thing not merely of particular persons but of all persons in the world. Such a proceeding is called a proceeding in rem, as distinguished from a proceeding brought to affect the interests in the thing of particular persons only, which is called a proceeding quasi in rem.

"* * *.

"Proceedings quasi in rem are of two types. In the first type the plaintiff asserts an interest in property and seeks to have his interest established as against the claim of a designated person or designated persons. * * *.

"In the second type of proceeding quasi in rem the plaintiff does not assert that he has an interest in the property, but asserts a claim against the defendant personally, and seeks to compel to the satisfaction of his claim the application of property of the defendant, by attachment or garnishment."

In line with the foregoing pronouncements we examine the notice afforded by constructive service on defendants in Ohio to determine existence of the third essential announced in Pennington v. Fourth Nat. Bank, supra, the opportunity of the owner to be heard.

The original notice with copy of petition attached informed defendants that William L. Mullenger was making a claim against them in the Crawford district court for a real estate commission allegedly due for the sale of their Denison property, and that he was seeking to compel to the satisfaction of his claim the application of their property by attachment. The prayer of the petition pointed out to them that an attachment was asked. The order let them know it had been issued and the notice of levy further apprised defendants their property had been seized. The original notice informed defendants of the steps necessary to preserve their opportunity to be heard and protect their interest in the real estate involved before judgment was rendered against them.

It must be conceded that personal service of the original notice with petition attached on these nonresidents outside the territorial jurisdiction of this state was ineffectual to confer on the court jurisdiction in personam. Nevertheless, even though the prayer of the petition originally asked for a personal judgment, the original notice with the contents of the petition and notice of levy were adequate to advise defendants how, when and where they might exercise the opportunity to be heard and protect their interest in the real estate involved. For this purpose it was certainly more effectual than a notice published in a Crawford County newspaper.

We hold the method of notice employed by plaintiff was reasonably calculated to give defendants knowledge of the attempted exercise of jurisdiction and an opportunity to be heard and was sufficient to confer on the court jurisdiction in rem.

The trial court correctly overruled defendants' special appearances.

II. In the other division defendants argue the court erred in (1) finding plaintiff had effected a sale of defendants' property, (2) failing to find as a matter of law that the contract of sale and sale of defendants' property was null and void for failure of conditions and (3) overruling defendants' motion to dismiss.

Before considering these matters, further narration of facts is called for. They appear to be undisputed.

Defendants orally listed their Denison house for sale with plaintiff, agreeing to pay a commission of 3 percent of the sale price. Plaintiff agreed to handle all negotiations to conclusion in defendants' behalf. Mullenger showed the house to prospective purchasers including Ferdinand and Merry Kruse who, after some negotiations, agreed to purchase the house. He had discussed the terms of the proposed sale in a conversation with defendants and specifically advised them the contract would be subject to the buyers' obtaining a loan from Denison Federal Savings and Loan Association with a pledge-back of $3000 by defendants as sellers being required.

Plaintiff had his attorney prepare a real estate contract wherein the purchasers agreed to pay $39,750 with $500 down and the balance on or before October 1, 1967, on delivery of warranty deed and abstract of title. Under the contract terms the sale was conditional upon the buyers' obtaining a written commitment from the Denison Federal Savings and Loan Association to take a real estate mortgage for $28,800 and defendants agreeing to pledge $3000 to the loan association as further security for its loan. As a further condition it was provided if either the loan or the pledge were not obtained or provided, the sale and contract would be null and void and the downpayment immediately returned to the purchasers.

Kruses' downpayment of $500 in the form of a check was delivered to defendant with the contract signed by them. Defendants signed the contract and orally agreed to the pledge-back.

June 23 the loan association gave Kruse a written commitment for 30 days for a loan of $31,800. The commitment expired and was not renewed. August 30 the loan association refused to renew or extend the commitment or make the loan to Kruse because of a change in his financial and employment status.

When the sale did not go through plaintiff filed his petition seeking the commission.

III. Our review is not de novo but only on errors assigned. Rule 334, R.C.P. In our review the findings of fact by the trial court have the effect of a special verdict and are equivalent to a jury verdict. If supported by substantial evidence and justified as a matter of law, the judgment will not be disturbed on appeal. Rule 344(f) (1), R.C.P. Stated in other words, in a law action tried to the court its findings of fact having adequate evidentiary support shall not be set aside unless induced by an erroneous view of law. It follows, the rule does not preclude inquiry into the question whether, conceding the truth of a finding of fact, the trial court applied erroneous rules of law which materially affect the decision. Alsco Iowa, Inc. v. Jackson, 254 Iowa 837, 840, 118 N.W.2d 565, 567; France v. Benter, 256 Iowa 534, 536, 128 N.W.2d 268, 270. We may also interfere when such findings are undisputed or no conflicting inferences may be drawn from them.

In support of their position defendants contend plaintiff's right to recover is dependent upon the sale of their real estate. They accurately point out in argument plaintiff had alleged in paragraph 1 of his petition, "defendants agreed to pay plaintiff a commission in the amount of * * * [3] percent of the selling price if plaintiff would sell defendants' dwelling house property * * * [description]." They argue the contract of sale was contingent upon three conditions and even if it were conceded the condition of Kruses' obtaining a written commitment from the loan association and their agreeing to pledge-back $3000 as security were met, there is no evidence of compliance with the third condition; that is, that the sale and contract would be a nullity if the buyer were unable to obtain a loan, a condition completely ignored by plaintiff and the court.

They insist the loan commitment letter of June 23 did not constitute a loan and that October 1, the time set when they could demand performance by the buyer,

Kruse had been denied a loan by the association. Defendants maintain the best which can be said for the real estate contract is that it constituted an offer to buy made by Ferdinand and Merry Kruse and an acceptance by them with the offer being contingent upon the buyers' obtaining the loan. This condition unfulfilled, the contract was void.

Plaintiff argues he became entitled to the commission when he produced a purchaser acceptable to defendant owners who then made a binding written contract with the purchasers providing for terms and conditions on which the purchasers were to have conveyance even though they subsequently failed to comply with the terms of the contract. He further asserts a subsequent default by purchasers in failing to comply with the contract terms and failing to fully consummate the contract by paying the balance due did not affect his right to commission.

The trial court in its findings determined the contract involved had two conditions: purchasers' obtaining a written commitment from the loan association to mortgage the real estate and agreement by the sellers to pledge-back $3000 as security for the loan. This second condition was effectually pledged by defendants' execution of the contract.

In its conclusions, the court observed that cases involving suits by brokers for commission fall into two classes: (1) those where the broker produces a buyer claimed to be ready, willing and able but where the seller refuses to enter into an agreement or to arrange for the sale. He further observed that this class of cases should not be confused with (2) those where the realtor presents a proposed purchaser with whom the employer contracts for the sale of the property and wherein thereafter the sale is not consummated. It was the court's conclusion the facts involved here came within this second class.

In reaching its conclusion that "under the law the proposed purchasers became the risk of defendants when the contract was entered into and plaintiff must be granted judgment for his commission", the court quoted and relied on this statement from an Annotation in 74 A.L.R.2d 437, 443:

"Generally, it may be said that where a real-estate broker procures a customer who is accepted by the principal, and a valid, binding or enforceable contract is drawn between them, the commission for finding the customer is earned even though the customer fails or refuses to comply with the contract."

At 445 of the Annotation the author cites Scott v. J. C. Ferguson Realty Co. (1928) 206 Iowa 1158, 221 N.W. 785; Nickelsen v. Morehead (1947) 238 Iowa 970, 29 N.W.2d 195, as supporting this general statement.

In White v. Miller, 259 Iowa 609, 614–615, 145 N.W.2d 28, 32, this court said:

"The law governing the right of a real estate broker to a commission has been well settled and consistently followed. In Nagl v. Small, 159 Iowa 387, 138 N.W. 849 the authorities were reviewed and the varying situations considered. We said:

"'If he undertakes to dispose of his principal's property on specified terms and effect a completed sale, then we have said that the agent is not entitled to his commission, although the purchaser proposed by the agent enters into a contract with the owner which he subsequently is unable to perform. (Citation)

"'On the other hand, if the agent undertakes to find a purchaser who shall buy on specified terms and conditions, he is entitled to his commission when he produces a purchaser who is ready, willing, and able to buy on the terms and conditions proposed, even though the owner refuses to enter into any binding contract with the proposed purchaser. (Citations)

"'Even though the seller and the purchaser enter into a tentative agreement as

to the terms of the sale, if a condition precedent to the contract's taking effect, such as a present cash payment, is not performed by the buyer, then the agent is not entitled to this commission, for the purchaser is not ready, willing, and able to make the purchase on the terms proposed. (Citations)

" 'It is well settled that when the agent proposes a purchaser acceptable to the owner, who makes with him a binding contract providing for the terms and conditions on which he shall have a conveyance of the property, nothing remaining as between them save the performance by such accepted purchaser of the terms and conditions of the contract thus entered into, the agent becomes entitled to his commission. * * *' (loc. cit. 389, 390, 138 N.W. 850)

"The extent to which the several rules set forth in Nagl have been followed is discussed in Nickelsen v. Morehead, 238 Iowa 970, 29 N.W.2d 195. See also Pond v. Anderson, 241 Iowa 1038, 44 N.W.2d 372."

The factual situation here is not one for application of the rule stated either in the first or second paragraph of the quote from White v. Miller, supra.

■ The statement in the annotation relied on by the court and the principle set out in the fourth paragraph of the quote from White v. Miller to the same effect expressly state that for the rule there recognized to be pertinent there must be a *valid, binding* or *enforceable* contract between buyer and seller. In other words, for the broker to be entitled to commission for services rendered in finding a purchaser of land, where no sale is actually consummated and he is relying on the fact the seller had accepted the buyer by entering into a tentative written agreement based on terms authorized by the seller, the broker must procure a valid obligation to buy. Flynn v. Jordal, 124 Iowa 457, 459, 100 N. W. 326, 327.

■ We disagree with plaintiff's contention defendants had entered into an enforceable agreement. To be an enforceable agreement a contract must create an obligation. If this is not true it is literally a bare agreement. Scott v. J. C. Ferguson Realty Co., supra, 206 Iowa at 1162, 221 N.W. at 787. That is, a manifestation of mutual assent by two or more legally competent persons to one another, an essential but not the only requisite to an enforceable contract. 1 Williston on Contracts, Third Ed., (Jaeger), section 2.

In determining whether there was a valid, binding or enforceable agreement between the buyer and seller we are immediately confronted with this provision of the contract:

"If the loan * * * is not obtained * * * this sale and contract to be null and void * * *."

Although Mullenger produced a buyer willing to purchase defendants' real estate on terms and conditions demanded by sellers, the buyers' liability to perform was expressly conditioned upon being able to obtain a mortgage from the Denison loan association. If unable to obtain the loan, buyers had no obligation to perform. There is no dispute Kruse was unable to obtain the loan when performance was due October 1, 1967. Under this circumstance defendants did not have an enforceable contract since the condition precedent to seller's right to performance, Kruse obtaining a loan, had not occurred.

■ Rather, they had entered into a tentative agreement with the buyers as to the terms of the sale subject to a condition precedent to the contract becoming binding and enforceable that a loan be obtained. This factual situation involves the pronouncement made in the third paragraph of White v. Miller, supra, and is governed by the rule stated there. Plaintiff cannot recover.

The court's findings plaintiff had effected a sale of defendants' property and its

conclusion defendants had the risk of performance by Kruse were induced by an erroneous view of law which materially affected the decision. The court applied a rule of law appropriate to a factual situation where a valid, binding or enforceable contract is procured by the broker seeking commission. As we have shown, such is not the case before the court.

For an excellent discussion of the seller's liability to the broker see Ellsworth Dobbs, Inc. v. Johnson, 50 N.J. 528, 543–558, 236 A.2d 843, 850–859, cited by defendants.

In view of the decision we have reached, it is unnecessary to consider other contentions argued by defendants in the second division of their brief and argument.

With directions to the trial court to set aside the judgment awarded plaintiff and to enter judgment for defendants, the case is

Reversed and remanded.

All Justices concur, except MOORE, C. J., who concurs in Divisions II and III and the result, and BECKER, J., who concurs specially.

BECKER, Justice (concurring specially).

I concur in the result but dissent from the holding in Division I.

In this case the nonresident defendant was served with original notice of an *in personam* action. The court acquired no jurisdiction as a result of such service and defendant could safely have ignored the notice. Amendment to an *in rem* action or a *quasi in rem* action *without further notice* is not "reasonably calculated to give defendant knowledge of the attempted exercise of jurisdiction and an opportunity to be heard."

It is submitted that a careful examination of the prayer of plaintiff's original petition and the prayer of the amended petition will show the basis of the lawsuit was changed without notice. This does not comport with due process. I would reverse on this ground.