ELEANOR BRENT POOLE, Appellee, v. HENRY M. POOLE, Appellant.

No. 42267.

November 20, 1934.

Rehearing Denied March 8, 1935.

F. H. Mackaman, Stipp, Perry, Bannister & Starzinger, and Parsons & Mills, for appellant.

Strock, Sloan & Dyer, for appellee.

Evans, J.—The material part of the contract was as follows:

"Whereas, it is the mutual desire of the parties hereto that in the event a divorce is granted and obtained by either of them, a fair and equitable property adjustment be made between them, it is, therefore, mutually agreed as follows:

"1. Henry M. Poole agrees that in the event a decree of divorce is entered dissolving the bonds of matrimony now existing between himself and Eleanor Brent Poole, he will pay to the said Eleanor Brent Poole the sum of Three Thousand ($3,000.00) Dollars cash and Two Hundred Fifty ($250.00) Dollars per month, commencing October 1, 1928, and continuing for the balance of her natural life, or until the said Eleanor Brent Poole remarries. In the event of the

death of Eleanor Brent Poole, all obligations of Henry M. Poole then existing under and by virtue of the terms of this contract shall cease and terminate. In the event the said Eleanor Brent Poole re-marries, all obligations of Henry M. Poole here created shall cease and terminate.

"2. The said Henry M. Poole agrees to make the payments aforesaid to any bank or trust company which the said Eleanor Brent Poole may designate, due notice of such designation having first been given to the said Henry M. Poole.

"3. The said Henry M. Poole shall have the option and right to settle and satisfy his part of this contract in full at any time by the payment of the sum of Fifty Thousand ($50,000.00) Dollars to the said Eleanor Brent Poole, or to anyone whom she may designate. In the event the said Henry M. Poole elects to pay the sum of Fifty Thousand ($50,000.00) Dollars aforesaid, then the said Eleanor Brent Poole shall execute and deliver to him a release and receipt in full for all claims and demands of every kind and character which she has or may or might have, arising or growing out of the marriage relation now existing between them.

"4. In the event of the death of Henry M. Poole, his obligations incurred in this contract shall be binding upon the executors, administrators or heirs of his estate in the sum of Fifty Thousand ($50,000.00) Dollars.

"5. In consideration of the foregoing terms and conditions well and truly performed by the said Henry M. Poole, the said Eleanor Brent Poole *waives and abandons any and all claims which she now has or may or might have against the said Henry M. Poole or his estate*, arising or growing out of the marriage relation now existing between them."

The defendant, husband, pleaded an affirmative defense of fraud in obtaining the contract, and none other. The answer defined the fraud alleged to have been committed by the plaintiff herein in substance as follows: That the wife had concealed from him the fact that she had committed adultery on a prior date, and that she falsely represented to him that she had not committed adultery; that, if he had known that she had committed adultery, he would not have entered into the contract sued on; that he did not in fact know of it until after the execution of the contract and until after he had made some of the payments thereunder. The evidence offered

on the trial by the defendant husband was all directed to proof of the adultery. No direct evidence of adultery was introduced. The proof was confined to circumstantial evidence. The acts thus testified to were all committed under observation of witnesses, and, so far as appears, the witnesses were all friends and employees of the defendant-husband. There is no showing that the defendant could not, with reasonable diligence, have procured the evidence at, and before, the date of divorce as readily as he procured it later. This, however, is a mere incident in the case, which we shall not have occasion to discuss. The disposition of the case turned finally upon the question whether the defendant had pleaded any valid defense. The answer is in three counts. The second count averred that, prior to the execution of the contract, "the plaintiff, Eleanor Brent Poole, falsely and fraudulently stated and represented to the defendant, Henry M. Poole, they being then husband and wife, that, throughout the course of their married life, she, the said Eleanor Brent Poole, had been and was a chaste, virtuous and faithful wife; that she had not been guilty of adultery but that, at all times, she had lived a virtuous life and had demeaned herself in strict accordance with her marriage vows; that this defendant had not knowledge of the truth or falsity of said statements and representations and that he believed the same and relied thereon and was thereby induced to and did execute the contract declared on; that in truth and in fact said statements and representations were false, fraudulent and untrue and were by the plaintiff known to be false, fraudulent and untrue at the time she made the same, and she made the same with the false and fraudulent intent and purpose of inducing defendant to execute said contract; and that had defendant known that plaintiff was not a virtuous wife and had he known that during her marriage to him she had been guilty of adultery he would not have entered into and executed said contract; that in truth and in fact, during her marriage to defendant, the plaintiff had been guilty of acts of adultery with divers other men, at divers times and places; that while she was still the wife of defendant the plaintiff was guilty of divers acts of sexual intercourse with one L. M., a baseball player, to wit, during the last week of August, 1928, at the residence of plaintiff at No. 2500 West Grand Avenue, in the City of Des Moines, Iowa."

We need not pursue further elaboration of the answer for the purpose of this discussion. Sufficient to say that the allegations of

the defense are predicated upon the theory that a husband may, after obtaining a decree of divorce upon grounds selected by him, take notice of, and press, a charge of adultery against the divorced wife committed before the decree of divorce and discovered by the husband thereafter; and may found a cause of action thereon. The theory of the defendant is, not that the adultery was a fraud upon him, but that the *concealment* thereof was such; and that the *false representation* of chastity was such a fraud. Such is the fraud which the defendant sets up as a defense to the performance of the contract concededly executed by him. His resulting syllogism implies that, in the absence of false representation or concealment, the *adultery* itself would not have constituted a fraud.

As to the legal merit of the theory of the defendant, as here set forth, we express no opinion and refrain from its discussion. The defendant has overlooked the fundamental rule that *fraud* in the obtaining of a contract renders it *voidable* only and not void. It is *void* only at the election of the injured party and not otherwise. Such injured party has the election to *rescind* the contract or to *ratify* it. He may, of course, waive the fraud and sue upon the contract. If he *rescinds*, he must *restore*. In an action at law, he may claim damages for the fraud. To claim damages is to ratify the contract and to look to the damages for his remedy. The defendant has neither rescinded nor set up a counterclaim for damages. It was apparently upon this ground that the trial court sustained a motion to direct the verdict. The contract on its face discloses that one of the considerations moving therein to the husband was that the wife would waive and abandon any and all claims that she might have against her husband arising out of their marriage relations. The parties were married in Des Moines in 1923. After the marriage, a home was bought and later improved. Its value on September 5, 1928, was somewhere between $20,000 and $60,000. The title thereto was in the name of the wife. It was thus conveyed to her by the seller with the consent of the husband. On September 5, at the time of signing this contract, the wife executed a conveyance of this home to the husband, and he has held the title thereto. Since the date of the divorce decree, September 14, 1928, other property was delivered to him, and all claim thereon relinquished by the wife under the terms of the contract. In the absence of this contract, the wife had a potential right to alimony at the discretion of the court. The contract barred her from making any such claim. In the absence of

the contract, she had a presumptive right to claim the value of the house conveyed by her. The contract barred this claim. We have held that parties to a divorce may stipulate as to division of property. The defendant has had the full benefit of the operation of the contract. He may not repudiate its obligations and retain its benefits. All he claims is that, by refusing to pay the installments, he *repudiated* the contract, and so notified the wife. He has not *rescinded* nor offered to rescind in terms. He has not elected *to claim damages.* He pleaded no counterclaim for damages. He offered no evidence of damages. In short, he has set up no legal defense to the performance of the contract on his part.

The trial court properly so ruled, and its judgment is affirmed.

MITCHELL, C. J., and STEVENS, KINDIG, and DONEGAN, JJ., concur.