**WATKINS PRODUCTS, INC., Appellant,**

v.

**Charles E. McBIRNIE and Julia A. McBirnie, Appellees.**

**No. 55068.**

Supreme Court of Iowa.

Oct. 18, 1972.

Mahoney, Jordan & Statton, Boone, for appellant.

Doran, Doran, Doran & Courter, Boone, for appellees.

Heard before MOORE, C. J., and MASON, RAWLINGS, LeGRAND and REES, JJ.

REES, Justice.

This appeal grows out of a suit for the collection of an account allegedly due plaintiff for goods shipped to defendants pursuant to a written agreement between the parties. Defendants in answer asserted they were induced to enter into the agreement under which the goods were shipped because of certain fraudulent misrepresentations made to them by the plaintiff. Trial was had to the court, jury having been waived, and trial court entered its findings of fact, conclusions of law and judgment, holding plaintiff had fraudulently induced defendants to enter into the agreement under which the goods were ordered, and that plaintiff was entitled to have its goods back but must bear the expense of their return, and that defendants were entitled to avoid any obligation under the purchase agreement including liability on the account sued for. Plaintiff appeals. We affirm.

Sometime prior to May, 1968 defendant McBirnie answered plaintiff's advertisement in the Des Moines Register soliciting dealership applications. He was contacted by a Mr. Holmes, an area manager of plaintiff, who represented to McBirnie that the area in which he was interested in working was a new area, and that the company would arrange for a three-week training period in the field with a company representative. McBirnie, then aged 22, was inexperienced in sales, but he was assured by Holmes that he could do well with the company selling a line of exclusive farm supplies.

Defendants later went to the home office of plaintiff at Winona, Minnesota, and had substantially the same conversation with an official of the plaintiff-company, and at that time signed a "purchase agreement" under the terms of which they became vendees of plaintiff's products, and it appears that defendants were then under the impression that they had bargained for the wholesale purchase of farm supplies. When defendants left Winona, plaintiff's representatives told them they had not as yet been definitely accepted as salesmen, but that they would be contacted sometime in the near future.

Shortly thereafter defendants were again visited by Mr. Holmes who told them that the purchase agreement had been executed by the company and that defendants had been accepted as salesmen. There was at that time some discussion between defendants and Mr. Holmes as to what they should order for the purpose of resale, and Holmes suggested they execute an order form in blank so that he (Holmes) could fill it out based on his knowledge of what

defendants would need. This defendants agreed to do and signed the purchase order under the impression they would be furnished a quantity of farm products and supplies to sell to the trade.

About two weeks after the McBirnies signed the order in blank a truckload of merchandise arrived at their home, and Mr. McBirnie was shocked at seeing the merchandise and to learn the shipment consisted almost entirely of household items. He asked the truck driver where the farm supplies were, but received no satisfaction. That same evening McBirnie called Holmes to ask if he had received the right order and was told by Holmes that he had received the merchandise ordered. McBirnie again stated to Holmes that he wanted to sell a farm line only, but Holmes instructed him to hold on to the goods and that Holmes would try to find somebody else in the area to take them over. McBirnie made no effort to sell the merchandise until May 20, 1968, when Mr. DeBoer, a field manager for Watkins, came to defendant's home to give him the "on-the-job training", which consisted of one day spent making 16 calls, interviewing 13 persons, and making 8 sales. The total sales aggregated $25.62, of which $18.87 was received in cash. The one day spent with Mr. DeBoer constituted the entire training period, and during the course of that day McBirnie was told by DeBoer he could not expect to make a living selling just products of a farm line, but would have to sell household items as well. McBirnie later complained to Holmes, and was told by Holmes that McBirnie could not "make it" on a farm line alone, but McBirnie recalled to Holmes that he had been told by the company officials before he had signed any agreement that he could expect to make a living selling farm supplies; and McBirnie further reminded Holmes that he would not have signed the agreement if he knew he was going to be required to sell household goods to make a living. McBirnie then told Holmes he wanted to send the products back to the company, but was told by Holmes to retain them in his possession—not to send the goods back as Holmes would try to find someone else in the area to take them over, as to return them to the home office would cost McBirnie too much money.

On June 4, 1968 Watkins mailed McBirnies a form letter terminating the dealership, and informing them that their account would be credited with the values of any salesable items returned to plaintiff's office at Winona, freight prepaid. McBirnies were concerned about the freight costs, and believed themselves to have been wronged in the whole transaction; they called Holmes, who again told them to retain the items and that he would attempt to have the company find another dealer in the area to take them over. Defendants continued to rely upon repeated assurances by Holmes that the merchandise would be turned over to another dealer in the area.

On October 11, at the instance of defendants, their attorney wrote Watkins pointing out defendants' complaints and offering the goods back. Watkins again insisted the goods be shipped back freight prepaid, and threatened litigation, as a consequence of which suit was instituted against defendants demanding judgment for goods sold and delivered in the sum of $1351.19. Trial was had to the court, and the court found the contract entered into between plaintiff and McBirnies was induced by fraud, and rendered judgment in favor of the defendants, dismissing plaintiff's petition on condition defendants surrender possession of the merchandise involved and pay to plaintiff the sum of $25.62 representing the value of the goods sold by defendants and plaintiff's representative, Mr. DeBoer. Costs were taxed to plaintiff.

Plaintiff assigns two errors upon which it relies for reversal:

I. The court erred in finding plaintiff fraudulently induced defendants to sign the purchase agreement, and

II. The court erred in finding defendants had not waived the "power of avoidance" of the contract.

 I. In its first assignment of error, plaintiff asserts trial court erred in finding plaintiff fraudulently induced defendants to sign the purchase agreement. This action was at law and was tried to the court, jury waived; our review, therefore, is limited to a consideration of errors assigned, and is not de novo, and the findings of fact of the trial court are binding upon us if supported by substantial evidence. Rule 344(f)(1), Rules of Civil Procedure. The trial court's findings of fact in this case have the effect of a special verdict. Rule 334, R.C.P.

In their answer, defendants raised the defense of fraud in the inducement of the contract, and evidence was offered on behalf of the defendants as well as on the part of the plaintiff. It was trial court's responsibility to weigh the evidence and determine the credibility of the witnesses, and in making such determination trial court found there was a preponderance of evidence of fraud on the part of the plaintiff by which the defendants were induced to enter into the agreement which is in effect the subject matter of this controversy.

 Trial court specifically found that the evidence tending to establish fraud was clear, satisfactory and convincing; that goods were sent to the defendants by plaintiff which has not been ordered and which should not have been sent to them, and that defendants were not limited to the remedy provided by the terms of the agreement and were required only to offer back to plaintiff the goods received. Trial court found defendants were promised what they bargained for, but were furnished something materially different. We conclude the trial court did not err in its findings and its conclusion that defendants were fraudulently induced by plaintiff to enter into the purchase agreement. In re Koch's Estate, 258 Iowa 1251, 142 N.W.2d 541 (1966); Wyckoff v. A & J Home Be-

nevolent Ass'n. of Creston, 254 Iowa 653, 119 N.W.2d 126 (1962); Poole v. Poole, 219 Iowa 70, 257 N.W. 305 (1934).

II. Plaintiff further asserts as a second assignment of error that defendants had not waived the power of avoidance and that trial court erred in its finding and conclusion in this regard.

 The record establishes that at the time of the receipt of the goods and when they were being unloaded from plaintiff's truck, defendants complained the merchandise which was then being unloaded was not the merchandise they understood they were to receive. Their conduct was at all times consistent with their claim the merchandise was not as represented and ordered. Trial court found that although they had floundered around a bit after discovering they had been wronged, there is nothing in the conduct of defendants strong enough to deprive them of their power of avoidance. 17 Am.Jur.2d, Contracts, see generally § 151; Restatement of the Law, Contracts, §§ 476, 479 and 490(1); Annot. 13 A.L.R.2d 1248, et seq.

We find no error in the record in this case. The trial court is affirmed.

Affirmed.