Jerry LANDEN, Personal Representative of the Estate of James T. Morgan, deceased. Appellant (Defendant)

Anna H. Morgan, (Defendant),

v.

PRODUCTION CREDIT ASSOCIATION OF the MIDLANDS, Appellee (Plaintiff).

No. 86–262.

Supreme Court of Wyoming.

May 29, 1987.

Eric M. Alden of Jones, Jones, Vines & Hunkins, Wheatland, for appellant.

Jerry A. Yaap of Bishop, Bishop & Yaap, Casper, for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

MACY, Justice.

Appellee Production Credit Association of the Midlands (PCAM) filed an action seeking judgment against appellant Jerry Landen, personal representative of the estate of James T. Morgan, deceased, and Anna H. Morgan, wife of the decedent, on a promissory note signed by James T. Morgan and Anna H. Morgan. PCAM also sought foreclosure of two mortgages and a security agreement signed by the Morgans. A judgment and decree of foreclosure was entered in favor of PCAM.

We affirm in part and reverse in part.

Appellant presents the following arguments:

"I. THE DESCRIPTION OF COLLATERAL CONTAINED IN THE SECURITY AGREEMENT IS CONTROLLING OVER A DIFFERING DESCRIPTION IN A FINANCING STATEMENT.

"II. IF PROPERTY IS NOT DESCRIBED IN THE SECURITY AGREEMENT, NO SECURITY INTEREST IN IT IS CREATED.

"III. IF PROPERTY IS NOT DESCRIBED ON A FINANCING STATEMENT, ANY SECURITY INTEREST REMAINS UNPERFECTED AND IS SUBJECT TO LATER PERFECTED CASES.

"IV. A MORTGAGEE HAS NO RIGHT TO RENTS AND PROFITS PRIOR TO THE TAKING OF SOME ACTION ON HIS PART TO REDUCE THE RENTS AND PROFITS TO POSSESSION."

PCAM sets out the arguments as follows:

"A. THE DESCRIPTION OF THE COLLATERAL SET FORTH IN THE SECURITY AGREEMENT, FINANCING STATEMENTS, AND MORTGAGE DEEDS IS SUFFICIENT TO CREATE A VALID SECURITY INTEREST IN THE PROPERTY QUESTIONED AS BETWEEN THE CREDITOR AND DEBTORS.

"1. The Security Agreement

"2. The Platte County Financing Statement

"3. The Albany County Financing Statement

"4. The Real Estate Mortgage—Platte and Albany Counties

"5. The Law—Sufficiency of Description

"B. WHETHER THE DESCRIPTION OF THE COLLATERAL CONTAINED IN THE SECURITY AGREEMENT IS CONTROLLING OVER A DIFFERENT DESCRIPTION IN A FINANCING STATEMENT IS IMMATERIAL IN A SECURED TRANSACTION BETWEEN CREDITOR AND DEBTOR.

"C. IT IS NOT NECESSARY TO SPECIFICALLY DESCRIBE PROPERTY IN THE SECURITY AGREEMENT TO CREATE A SECURITY INTEREST.

"D. THE ESTATE OF JAMES T. MORGAN HAS NO GREATER RIGHTS THAN JAMES T. MORGAN, DEBTOR, AND DOES NOT RECEIVE A PERFECTED INTEREST WHICH IS SENIOR TO THAT OF THE SECURED CREDITOR.

"E. APPELLEE, AS MORTGAGEE, HAS THE RIGHT TO RENTS AND PROFITS PURSUANT TO BOTH THE SECURITY AGREEMENT AND THE REAL ESTATE MORTGAGES UPON DEFAULT AS AGREED UPON BY THE CONTRACTING PARTIES."

In September of 1983, the Morgans borrowed $1,799,361 from PCAM in order to finance the operation of their ranch in Platte and Albany Counties, Wyoming. The promissory note signed by the Mor-

gans provided that the loan would be repaid in full by September 15, 1984. The loan was also evidenced by a security agreement, two financing statements, and two mortgage deeds signed by the Morgans.

Although the Morgans failed to repay the loan in full by September 15, 1984, PCAM took no action at that time to collect the amount due. The Morgans continued to make payments on the loan until Mr. Morgan's death on May 30, 1985. At probate proceedings held on July 23, 1985, appellant was appointed personal representative of Mr. Morgan's estate. As personal representative, he proceeded to collect the assets of and accept claims against the estate.

On August 7, 1985, PCAM filed its complaint requesting judgment on the note, an order authorizing foreclosure upon the mortgage deeds, and an order directing appellant to show cause why he should not be required to deliver all the livestock and personal property described in the security agreement. On February 4, 1986, the district court issued an order directing appellant to appear and show cause. A hearing was held on February 21, 1986, at which time the parties were asked to brief the question of whether the estate assets were covered by the security agreement, financing statements, and mortgage deeds. Both parties thereafter filed briefs, and, on July 28, 1986, PCAM filed a motion for summary judgment accompanied by supporting affidavits and exhibits.

On August 21, 1986, the district court issued a decision letter stating in part:

"The Court finds that the Security Agreement covers all livestock including horses; hay; proceed[s] from the sale of hay; all machinery and equipment; and rents and profits received after September 15, 1984."

On September 3, 1986, the district court entered summary judgment in which it awarded PCAM $915,955.25, directed foreclosure of the mortgages, and ordered the sheriff to sell the property covered by the security agreement. An order directing appellant to deliver the property was entered on September 4, 1986.

Appellant contends that the description of collateral contained in the security agreement is controlling over the differing description in the financing statements. Before considering that issue, we must decide as a preliminary matter which of the two varying descriptions contained within the security agreement itself controls.

The parties inserted into the printed form the following typed description of the collateral:

"This security agreement is intended to cover 2569 head of cattle branded * * * on the left hip and more particularly described as: 1172 Cows[,] 889 Calves[,] 455 Mixed Yearlings[,] 53 Bulls[.]

"Together with all natural increase and additions to the above described livestock, including any livestock to be purchased.

"Together with all hay, grain and feed on hand, now growing, or hereafter to be acquired.

"Together with all crops now growing, or to be grown during the year 1983 on premises operated by said debtor.

"Together with all machinery and equipment now owned by said debtors, and consisting of, but not limited to the following, and including any machinery and equipment to be acquired."

Thereafter, the printed form contains the following description of the collateral:

"The Secured Party and Debtor agree: that, to the maximum extent permitted by law, any and all collateral of like type or kind as that described herein as part of the collateral, now owned or hereafter acquired by the Debtor shall secure all obligations covered by this Security Agreement, and Secured Party shall have a security interest in all such collateral by reason of this agreement, for the purposes herein described * * *. The parties hereto further agree: that this Security Agreement includes all live stock now owned or hereafter acquired by Debtor, whether by purchase, natural increase, or otherwise during the continuance of this Agreement * * *; that

crops covered by this Security Agreement shall include all of the Debtor's interest in any and all crops now growing and any such crops planted within one year after this agreement is executed by the Debtor, and that such crops include hay, grass, pasturage, grass upon any range land, * * * and all farm crops of every kind and description."

■ We have held that a contract will be construed most strongly against the party who drafted it. *Security State Bank of Basin v. Newton,* Wyo., 707 P.2d 173 (1985). We also have held that general terms and provisions in a contract yield to specific ones, if not reconcilable. *Flora Construction Company v. Bridger Valley Electric Association, Inc.,* Wyo., 355 P.2d 884 (1960). Applying these rules, we find that the specific typewritten description of the collateral which the parties inserted into the printed form controls over the general description contained in the standard printed form.

We turn next to appellant's assertion that the description of the collateral contained in the security agreement controls over the following description contained in the financing statements:

"This Financing Statement covers the following types (or items) of property (the collateral) checked below, including all products therefrom and all proceeds from the sale, transfer or disposition thereof:

"X̱ All of the Debtor's [l]ivestock

"X̱ All of the Debtor's feed for livestock

"X̱ All of the Debtor's farm and ranch machinery and equipment

"X̱ All of the Debtor's crops

"___ Other: (Describe and attach separate list if necessary)"

The following statutory provisions are pertinent to this issue:

Section 34–21–922(a)(i), W.S.1977.

*"[A] security interest is not enforceable* against the debtor or third parties with respect to the collateral and does not attach *unless:*

"(i) The collateral is in the possession of the secured party pursuant to

agreement, or *the debtor has signed a security agreement which contains a description of the collateral and* in addition, *when the security interest covers crops growing or to be grown* or timber to be cut, *a description of the land concerned;* * * * " (Emphasis added.)

Section 34–21–905(a)(xii), W.S.1977.

"In this article unless the context otherwise requires:

\* \* \* \* \* \*

"(xii) 'Security agreement' means an agreement which creates or provides for a security interest; * * * "

Section 34–21–951(a), W.S.1977.

*"A financing statement is sufficient if it* gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and *contains a statement indicating the types, or describing the items, of collateral.* * * * When the financing statement covers crops growing or to be grown, a statement must also contain a description of the real estate concerned." (Emphasis added.)

Section 34–21–910, W.S.1977.

"For the purposes of this article any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described."

■ Relying in part on these provisions, appellant argues that, where the descriptions contained in a financing statement and security agreement differ, the description contained in the security agreement controls. That is the position taken by the vast majority of courts, and we agree. See Annot., 100 A.L.R.3d 940 (1980), for other cases. As the court stated in *American Restaurant Supply Company v. Wilson,* Fla.App., 371 So.2d 489, 490 (1979):

"Although [UCC § 9–110 (§ 34–21–910, W.S.1977)] sets forth the test for sufficiency of the description of collateral in both the security agreement and the fi-

nancing statement, a description of collateral sufficient for a financing statement might not be sufficient in a security agreement. This is because the financing statement and the security agreement serve different purposes.

*"The purpose of the financing statement is merely to provide notice of a possible security interest in the collateral in question. The description of collateral in a financing statement is sufficient if it reasonably informs third parties that an item in the possession of the debtor may be subject to a prior security interest,* thus putting the parties on notice that further inquiry may be necessary.

*"The security agreement is the contract between the parties; it specifies what the security interest is. Because of its different function, greater particularity in the description of collateral is required in the security agreement than in the financing statement."* (Emphasis added and citations omitted.)

Applying this rationale to the present case, we hold that the description of collateral contained in the security agreement controls over that contained in the financing statements.

We turn next to the question of whether the description contained in the security agreement is sufficient to support the district court's finding that PCAM has a security interest in all livestock, hay, proceeds from the sale of hay, all machinery and equipment, and rents and profits received after September 15, 1984.

█ The security agreement specifically provides that it covers "2569 head of cattle" particularly described as cows, calves, yearlings, and bulls owned by the Morgans at the time the agreement was executed in addition to any cattle born, purchased, or otherwise added to the herd thereafter. Thus, the security agreement does not support the district court's finding that a security interest exists in all livestock including horses. The security agreement also provides that it covers all hay, grain, feed, and crops growing at the time the agreement was executed in addition to crops

grown thereafter in 1983. As demonstrated above, §§ 34–21–922(a)(i) and 34–21–951(a) require a description of the land concerned when the security interest covers crops growing or to be grown. Pursuant to § 34–21–910, the description must reasonably identify the realty. The security agreement in the present case describes the land as follows: "Various [s]ections, T25N and T26N, R76W, Albany County and various sections, T23N, T24N, T25N, and T26N, R68W, Platte County, Wyoming." The financing statements filed in each county contain the same description. It has been said that:

" '[A] real estate description in connection with crops is sufficient *if* it contains:

" '1. the name of the land owner

" '2. the approximate number of acres of the farm

" '3. the county of the location of the land

" '4. the approximate distance and direction of the farm from the nearest town or city.' " *United States v. Collingwood Grain, Inc.*, 792 F.2d 972, 974–75 (10th Cir.1986), quoting *United States v. McMannis*, 39 B.R. 98 (Bankr.D.Kan. 1983) (emphasis in original).

It also has been said that:

" '[T]he cautious creditor cannot go wrong by using a section-township legal description, so long as it is accurate.' " Id. at 975, quoting Kansas Comment to Kan.Stat.Ann. § 84–9–402, which discusses *Chanute Production Credit Association v. Weir Grain & Supply, Inc.*, 210 Kan. 181, 499 P.2d 517 (1972).

█ The description in the present case falls short of both of these tests. A vague reference to "various sections" within certain townships and ranges does not reasonably identify the land concerned so as to satisfy the requirements of § 34–21–922(a)(i), § 34–21–951(a), or § 34–21–910. Thus, despite the language indicating that the agreement covers any crops growing on the Morgan ranch at the time the agreement was executed or grown thereafter in 1983, the security agreement fails to create a security interest in any crops grown by the Morgans. The security agreement

does, however, cover any hay, grain, and feed "on hand" or "acquired" by the Morgans after the agreement was executed. That is, the security agreement covers any hay, grain, or feed obtained by the Morgans through purchase, exchange, or other like means, but it does not include any hay, grain, or feed grown by the debtors. In addition, the security agreement covers all machinery and equipment owned by the Morgans at the time the agreement was executed or thereafter acquired. Finally, while the security agreement covers all proceeds from the above-described property, it does not include rents received from leasing the property. This is in accordance with § 34–21–904(a)(x), W.S.1977, which clearly states that security agreements do not apply to leases or rents therefrom.

 We turn next to appellant's assertion that, because the property is not adequately described, any security interest remains unperfected and subject to later perfected claims. As indicated above, § 34–21–922(a)(i) requires a description of the property as a condition for attachment. Thereafter, § 34–21–932(a), W.S.1977, provides:

"A security interest is perfected when it has attached and when all of the applicable steps required for perfection have been taken. * * * If such steps are taken before the security interest attaches, it is perfected at the time when it attaches."

Thus, it is clear that a reasonable description is a precondition to attachment and attachment is a precondition to perfection. We already have stated that the description of the collateral is sufficient to create a security interest in the Morgans' cattle, machinery and equipment, and hay, grain, and feed on hand or acquired after execution of the security agreement. However, we also have stated that the description of the collateral is not sufficient to create a security interest in livestock other than cattle and that the description of the land concerned is insufficient to create a security interest in any crops, hay, grain, or feed grown by the Morgans. As to these items, the security interest remains unperfected.

Appellant next contends that, because PCAM's security interest remains unperfected, appellant, as personal representative of the estate, has priority over PCAM pursuant to § 34–21–930, W.S.1977. That section provides in relevant part:

"(a) Except as otherwise provided in subsection (b) of this section, an unperfected security interest is subordinate to the rights of:

\* \* \* \* \* \*

"(ii) A person who becomes a lien creditor before the security interest is perfected;

\* \* \* \* \* \*

"(c) A 'lien creditor' means a creditor who has acquired a lien on the property involved by attachment, levy or the like and includes an assignee for benefit of creditors from the time of assignment, and a trustee in bankruptcy from the date of the filing of the petition or a receiver in equity from the time of appointment."

 Appellant claims that, as personal representative of the estate, he occupies the same position as an assignee for the benefit of creditors, a trustee in bankruptcy, and a receiver in equity. Although a personal representative of an estate may occupy a position similar to that of an assignee for the benefit of creditors, a trustee in bankruptcy, and a receiver in equity, that position is not identical. Furthermore, the legislature expressly included executors or administrators of estates within the definition of creditor in § 34–21–120(a)(xii), W.S.1977, of the Uniform Commercial Code along with assignees for the benefit of creditors, trustees in bankruptcy, and receivers in equity. Had the legislature likewise intended to include personal representatives of estates within the definition of lien creditor, it could have done so. It did not, and consequently we conclude that a personal representative of an estate is not a lien creditor within the meaning of the Uniform Commercial Code.

We turn finally to appellant's assertion that PCAM, as mortgagee, has no right to rents and profits prior to taking possession

of the mortgaged property. In support of his claim, appellant refers the Court to § 2–7–401, W.S.1977, which provides in pertinent part:

"The personal representative is entitled to possession of all real and personal estate of the decedent, and to receive the rents and profits of the real estate until the estate is settled or until delivery by order of the court to the heirs or beneficiaries."

On the basis of this provision, appellant claims that PCAM was not entitled to rents and profits until either the estate was settled or the property was delivered.

Appellant's argument overlooks the following statutory provision. Section 1–18–104(f), W.S.1977, provides in pertinent part:

"The parties to a mortgage may provide that the mortgagee is entitled to a receiver or to the rents and profits upon default, or upon the date of sale *or at any time agreed upon.*" (Emphasis added.)

In conformity with that section, the mortgage deeds signed by the Morgans contained the following provision:

*"If the right of foreclosure accrues as a result of any default* hereunder, *the mortgagee shall at once become entitled* to exclusive possession, use and enjoyment of all property aforesaid, and *to all rents,* issues *and profits* thereof, from the accruing of such right and during the pendency of foreclosure proceedings and the period of redemption, *and such* possession, *rents,* issues *and profits shall be delivered immediately to the [m]ortgagee on request.* On refusal, the delivery of such possession, rents, issues and profits may be enforced by the [m]ortgagee by any appropriate suit, action or proceeding." (Emphasis added.)

Pursuant to that provision and § 1–18–104(f), PCAM was entitled to rents and profits when the right of foreclosure accrued. The mortgage provision, however, is not self-executing. The right of PCAM to receive rents and profits from the mortgaged property prior to taking possession will not accrue until PCAM takes some affirmative action to exercise that right. *Ryen v. Park Hope Nursing Home, Inc.,*

38 B.R. 642 (Bankr.W.D.N.Y.1984); *Empire State Collateral Co. v. Bay Realty Corporation,* 232 F.Supp. 330 (E.D.N.Y. 1964).

"The mortgagee must take steps to perfect his rights, and it ought to be assumed, as it was in *Freedman's Savings & Trust Co. v. Shepherd,* [127 U.S. 494, 8 S.Ct. 1250, 32 L.Ed. 163 (1888),] that the provision is not self-executing and that until he asserts his claim he is content to let the mortgagor receive the earnings of the premises." *Prudential Ins. Co. of America v. Liberdar Holding Corporation,* 74 F.2d 50, 52 (2d Cir. 1934).

Sound policy dictates that a mortgagee should not be able to sit back and permit a defaulting mortgagor to apply rents and profits to the payment of his mortgage note, maintenance and improvement of his farm or business, or otherwise, and then claim entitlement to those rents and profits when the decision is made to foreclose.

The district court's judgment is affirmed in part and reversed in part, and the case is remanded to the court for further proceedings consistent with this opinion.