**FIRST STATE BANK, A Corporation, Appellant,**

v.

**SHIRLEY AG SERVICE, INC., Defendant,**

**and**

**Percival Grain, Inc., Appellee.**

No. 86–1300.

Supreme Court of Iowa.

Dec. 23, 1987.

Raymond R. Aranza of North & Black, P.C., Omaha, Neb., for appellant.

Jon H. Johnson of Leonard, Johnson & Graeser, P.C., Sidney, for appellee.

Considered by LARSON, P.J., and CARTER, LAVORATO, NEUMAN, and SNELL, JJ.

SNELL, Justice.

On January 17, 1986, appellant First State Bank initiated the present action, seeking damages for the alleged conversion of crops in which it maintained a security interest. Prior to trial, Shirley Ag Service was dismissed as a defendant. Trial was had to the court which subsequently entered judgment in favor of appellee Percival Grain, Incorporated, and dismissed the bank's petition. This appeal follows the bank's unsuccessful motion for new trial. Our review is limited to the correction of legal errors. Iowa R.App.P. 4.

I. *The Facts.*

First State Bank is located and does business in Tabor, Iowa. Percival Grain is a grain elevator located and doing business in Percival, Iowa. The present action concerns certain crops grown by Jan Zach, an area farmer, in 1984 and sold in February and March, 1985. Both parties to this appeal claim security interests in these crops, although neither party's security interest was perfected. The crops were grown in two locations, referred to as the "Laird" farm and the "Zach" farm. These crops were disposed of through Percival Grain, which made the following stipulated distribution of the proceeds:

a) $15,382 was retained by Percival Grain for payment of Jan Zach's obligations to Percival Grain;

b) $8124.25 was paid to Jan Zach by two checks in the amounts of $3848.65 and $4275.60, respectively;

c) $5241.34 was paid by check to Jan Zach and Shirley Ag Service, Incorporated;

d) $237.02 was retained by Percival Grain for miscellaneous charges.

Of the $28,985.60 in total proceeds, $18,595.65 is attributable to crops grown on the Zach farm and $10,389.95 attributable to crops grown on the Laird farm. The district court's judgment for Percival Grain was based upon a combination of several theories: that First State Bank's security interest in crops grown on the Zach farm was unenforceable due to an incorrect legal description of the crop's location contained in a 1982 security agreement; that First State Bank had waived its security interest in the crops by acquiescing in a prior course of dealing whereby Zach's crops were regularly sold to Percival Grain; and that Percival Grain was a buyer in the ordinary course of business with respect to a portion of the crops.

II. *Security Agreement's Incorrect Description of Collateral's Location.*

The district court, relying on *First National Bank in Creston v. Francis*, 342 N.W.2d 468 (Iowa 1984), concluded that First State Bank maintained no security interest in crops located on the Zach farm because the description of the crop's location, contained in a 1982 security agreement, was incorrect. The security agreement described the collateral's location as section 22, township 69, range 44. In fact, the Zach farm crops were located in section 22, township 69, range 43. The 1982 instrument was the only one of First State

Bank's security agreements that attempted to describe the location of the Zach farm crops. First State Bank, relying on certain language contained in *Francis*, argues that this case is distinguishable because the 1982 security agreement contains information which would alert a reasonable third party to the fact that the description was incorrect. We agree that *Francis* does not control the point, but distinguish the case on essentially legal, as opposed to factual, grounds.

Iowa Code section 554.9203 (1983) provides, in pertinent part, that:

[A] security interest is not enforceable against ... third parties with respect to the collateral and does not attach unless ... the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops growing or to be grown ... a description of the land concerned.

Relatedly, Iowa Code section 554.9110 (1983) states that "[f]or the purposes of this Article any description of ... real estate is sufficient whether or not it is specific if it reasonably identifies what is described."

In *Francis* this court was presented with an inaccurate legal description contained in both a security agreement and a financing statement. We affirmed the district court's dismissal of a conversion action because the description failed to impart constructive notice of the security interest to a third-party buyer. Our precise conclusion was that the "description was 'seriously misleading' and [as a result] did not encumber" the collateral at issue. 342 N.W.2d at 471. The rationale of the court is indicated by its application of the "seriously misleading" test. That test is taken from Iowa Code section 554.9402(8) which deals with the adequacy of financing statements. Financing statements serve the purpose of "giving public notice to other creditors that a security interest is claimed in the debtor's collateral." *In re Bollinger Corp.*, 614 F.2d 924, 926 (3d Cir.1980); Iowa Code § 554.9402 (1985), Uniform Commercial Code comment 2; J. White & R. Summers,

*Handbook of the Law Under the Uniform Commercial Code*, § 23–3 at 910, § 23–16 at 961 (2d ed. 1980). The court's focus on the financing statement and the inadequacy of notice given thereby is reflected in the court's framing of the controlling analysis: "Our decision must turn not on whether the description was sufficient to secure crops but on whether it was so specific that it could only reasonably be read to secure the crops on the described land." 342 N.W.2d at 470.

■ The case at bar, however, does not present us with the concerns for proper notice which motivated the court in *Francis*. This is because here we deal only with a security agreement, an instrument which does not serve a notice function. Rather, the purposes served by a security agreement are those of providing signed evidence of an agreement and of obviating any statute of frauds problems with the debtor-creditor relationship. *In re Bollinger Corp.*, 614 F.2d at 926; Iowa Code § 554.9203 (1985), Uniform Commercial Code comments 3, 5; J. White, *Handbook* § 23–3 at 910. Our cases have acknowledged the different functions of these two documents. *See Murray v. Conrad*, 346 N.W.2d 814, 819 (Iowa 1984).

The statutory test for the sufficiency of a security agreement is only that of reasonable identification. Iowa Code §§ 554.9203; 554.9110 (1983). This test does not include the prohibition of "seriously misleading" statements which was our concern in *Francis*. This is, of course, because a security agreement does not purport to "lead" anyone to anything. *See* J. White, *Handbook*, § 23–3 at 904 ("We suspect that it will be rare indeed when a third party has so much as looked at much less been misled by another's security agreement."). Because a security agreement does not serve the function of supplying adequate notice to third parties, and because that is the function with which this court was concerned in *Francis*, we do not believe *Francis* is of controlling significance here. Neither do we think Percival Grain is entitled to strike down First State Bank's security interest by arguing that the Bank's security agree-

ment fails to further a purpose which it was never meant to serve. We note parenthetically that Percival denies having ever seen the security agreement; much less can it support an argument of having been, in fact, misled by it. Therefore our analysis must be the inversion of that which guided us in *Francis:* our decision must turn not on whether the description was so specific that it could only reasonably be read to secure the crops on the described land but on whether the description was sufficient to secure the crops.

Cases addressing the sufficiency of a security agreement's description of land upon which collateral is located uniformly turn on whether the description is overbroad or vague. *Compare In re Byrd*, 66 B.R. 261, 268 (Bankr.N.D.Miss.1986) ("extraordinarily vague, overly broad and, as such ... insufficient to create a security interest ..."); *Gold Kist, Inc. v. Farmers & Merchants Bank*, 425 So.2d 452, 453–54 (Ala.1983) (too vague); *Landen v. Production Credit Ass'n of the Midlands*, 737 P.2d 1325, 1329–30 (Wyo.1987) (too vague) *with In re Younce*, 56 B.R. 232, 233–35 (E.D.Wis.1985) (sufficient description); *In re Frazier*, 16 B.R. 674, 680 (M.D.Tenn. 1981) ("[a]ll of the above described crops are or will become located on the farm land owned (rented) by Edward Frazier and all various farms in DeKalb County, Tennessee" held to have satisfied "reasonable identification" standard); *see also United States v. Newcomb*, 682 F.2d 758, 762 (8th Cir.1982) (upheld, as not clearly erroneous, district court's finding that "reasonable identification" test had been satisfied). Vagueness is not an issue in this case, however. The description at issue, though incorrect, is specific.

■ A security agreement is a contract between the secured party and the debtor, specifying what the security interest is. *Landen*, 737 P.2d at 1329. Unless displaced by particular provisions of the Iowa Commercial Code, general principles of law and equity are fully applicable to security agreements. Iowa Code § 554.1103; *F.S. Credit Corp. v. Shear Elevator, Inc.*, 377 N.W.2d 227, 231 (Iowa 1985). The Code

does not specifically treat the legal effect of a "scrivener's error" such as that involved here. That this is the type of error with which we are dealing is clear from the testimony of Jan Zach that he intended to give First State Bank security interest in the crops located on the land he was, in fact, farming. In addition, all parties to this appeal concede, and base their respective arguments upon, the fact the description is incorrect. As the Code does not cover this contingency, we fall back upon the common law of contracts. *See F.S. Credit Corp.*, 377 N.W.2d at 231.

■ An error in expressing an agreement reached by parties, such as the erroneous reduction to writing of a term agreed upon, is a mistake as to a basic assumption underlying the contract. Restatement (Second) of Contracts § 155, comment b at 408 (1981); *Akkerman v. Gersema*, 260 Iowa 432, 437, 149 N.W.2d 856, 859 (1967). Such a mistake does not, however, render a contract void; it only renders the contract voidable by the adversely affected party to the contract. Restatement (Second) of Contracts § 152 at 385. In the present case, neither party to the security agreement seeks to avoid its effect. Against the rest of the world, including Percival Grain, the agreement is valid. *See Poole v. Poole*, 219 Iowa 70, 74, 257 N.W. 305, 307 (1934) (voidable contract is "void only at the election of the injured party and not otherwise."); Restatement (Second) of Contracts § 7.

We have noted above that the purposes of a security agreement's description requirement are limited to the satisfaction of evidentiary and statutes of frauds concerns. This appeal raises questions as to neither of these concerns. There is no question but that the parties to the security agreement knew exactly where the collateral was located and failed only in their attempt at exactitude. The agreement is valid according to general principles of contract law. Given these facts, we conclude the description "reasonably identifies" the location of the crops and, as such, is sufficient to create a security interest in them enforceable against third parties.

### III. *Waiver By Prior Course of Dealing.*

 Iowa Code section 554.9306(2) (1983) provides:

Except where this Article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

We have held the "or otherwise" language of this provision includes authorization resulting from an implied waiver of the security interest and that such an implied waiver may result from the establishment of a prior course of dealing, acquiesced in by the secured party, involving the collateral. *See Ottumwa Prod. Credit Ass'n v. Keoco Auction,* 347 N.W.2d 393, 395 (Iowa 1984); *Hedrick Savings Bank v. Myers,* 229 N.W.2d 252, 254–55 (Iowa 1975); *Lisbon Bank and Trust Co. v. Murray,* 206 N.W.2d 96, 98 (Iowa 1973). An implied waiver resulting from such a course of dealing is unaffected by the debtor's refusal to abide by a condition attached by the secured party to its authorization of the transaction, such as that the debtor will apply the proceeds to the secured debt. *Lisbon Bank and Trust,* 206 N.W.2d at 99. Likewise, the nonperformance of a condition imposed upon a debtor will not affect the rights of a purchaser who neither is a participant in the condition nor has knowledge thereof. *Producers Livestock Mktg. Ass'n v. John Morrell & Co.,* 220 Iowa 948, 952, 263 N.W. 242, 244 (1935) (quoting 11 C.J. *Chattel Mortgages* § 339 at 624 (1917)); *see Ottumwa Prod. Credit Ass'n,* 347 N.W.2d at 397. The rationale of these rules is that when a secured party waives its lien the personal obligation of the debtor is substituted for the collateral. *Lisbon Bank and Trust,* 206 N.W.2d at 99; *See Ottumwa Prod. Credit Ass'n,* 347 N.W.2d at 397.

 The present record includes the following testimony given by Jerry Jobe, vice-president and cashier of First State Bank:

Q. And was the bank aware that he always sold his crop to Percival Grain? A. Yes.

Q. And as far as you know, they never made any written request or oral request that he not do that? A. What time frame are we speaking? Are you saying totally they never made any request on that?

Q. Right. A. I don't believe they did.

Q. Wasn't the general practice that Mr. Zach would sell his grain, and then he would get a check for the proceeds from Percival Grain, and bring it to the bank? A. Correct.

Q. And the bank had no problem with him doing that? A. No.

Q. And so the bank relied on Mr. Zach to bring the proceeds to the bank? A. Yes.

Q. At any time did the bank notify Percival Grain that they were not to buy grain from Jan Zach? A. To buy from Jan Zach? Not to buy grain? No. Not to my knowledge they were never instructed not to buy grain.

Q. And Percival Grain was never notified by the bank to not give the proceeds to Jan Zach? A. Not to my knowledge they were not.

Q. And as far as you know, the bank never gave Percival Grain any notices that they had a security interest in Jan Zach's crop? A. As far as direct communication—I mean—

Q. Direct communication. A. First State Bank write to Percival Grain or Shirley Ag; is this what you are saying, sir?

Q. Yes. A. I don't believe we did.

This testimony corroborates that given by Jan Zach. We think this evidence demonstrates the existence of a prior course of dealing whereby First State Bank knew of, and acquiesced in, Zach's sale of the collateral to Percival Grain.

In the case at bar, however, we must take account of a factor which was present in the challenged transaction and which was not a part of the prior course of dealing: First State Bank's service of fore-

closure papers on Jan Zach prior to Zach's disposition of the secured crop. In this state, a secured creditor's right to possession of the collateral accrues upon default, unless otherwise agreed. Iowa Code § 554.9503 (1983). In an analogous situation, we have held that an obligee's contractual rights under a promissory note, even though previously waived by a course of dealing between the parties, may be enforced if the obligor is informed of the note-holder's intention to rely on the rights in the future. *Dunn v. General Equities of Iowa, Ltd.*, 319 N.W.2d 515, 517 (Iowa 1982). A party's entitlement to withdraw the waiver of contractual rights upon reasonable notice is familiar to this court. *See Nora Springs Coop. v. Brandau*, 247 N.W. 2d 744, 749 (Iowa 1976); *Bettis v. Bettis*, 228 N.W.2d 193, 195 (Iowa 1975); Iowa Code § 554.2209(5) (1983). In fact, we have held that notice of contractual forfeiture is itself a notice of withdrawal of a previous waiver of a contractual right. *Janes v. Towne*, 201 Iowa 690, 699, 207 N.W. 790, 792 (1926); *see Bettis*, 228 N.W. 2d at 195. Similarly here, we hold as a matter of law that when First State Bank chose to foreclose on its secured property and duly served Zach with notice of the foreclosure, the bank effectively withdrew its earlier grant of implied authority to dispose of the secured property. In so holding, we emphasize that the dispositive issue is whether this particular disposition of collateral was authorized by the secured party. *See* Iowa Code § 554.9306(2) (1983). Under the present facts, which disclose both First State Bank's affirmative efforts to protect its security interest through foreclosure proceedings and Zach's actual knowledge thereof, we hold that, as a matter of law, the disposition at issue was not authorized by the prior course of dealing.

## IV. *Buyer in the Ordinary Course of Business.*

The district court concluded that Percival was a buyer in the ordinary course of business with respect to those crops the proceeds of which were distributed to Jan Zach and to Zach and Shirley Ag Services as joint payees. These payments totaled $13,365.59. Iowa Code section 554.1201(9) (1983) provides, in pertinent part, as follows:

"Buyer in ordinary course of business" means a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker ... "Buying" may be for cash or by exchange of other property or on secured or unsecured credit and includes receiving goods or documents of title under a pre-existing contract for sale but does not include a transfer in bulk or as security for or in total or partial satisfaction of a money debt.

Percival Grain contends its status as a buyer in ordinary course gives it rights superior to First State Bank's unperfected security interest. This claim is grounded in Iowa Code section 554.9301(1)(c) (1983) which provides, in pertinent part, as follows:

Except as otherwise provided in Subsection 2, an unperfected security interest is subordinate to the rights of ... in the case of goods ... a person who is not a secured party and who is ... a buyer of farm products in ordinary course of business, to the extent that he gives value and receives delivery of the collateral without knowledge of the security interest and before it is perfected.

We note that because Percival was not a secured party with respect to the crops which were exchanged for cash proceeds, it is not excluded from this section. *See* U.C. C. § 554.9301 comment (4) (1968).

As a threshold matter, First State Bank contends that, as a portion of the transaction at issue involved the satisfaction of an antecedent debt, the entire transaction falls outside the parameters of "buyer in ordinary course" protection. Had the transaction at issue here been a simple transfer of the crops in exchange for the partial or total satisfaction of an antecedent debt, we are convinced that it would run afoul of the express exclusion contained in section 554.-

1201(9). *United States v. Handy and Harman*, 750 F.2d 777 at 781–83 (9th Cir. 1984); *United States v. Greenwich Mill & Elevator Co.*, 291 F.Supp. 609, 693 (N.D. Ohio 1968); *In re Skinner Lumber Co.*, 37 B.R. 250, 252 (Bkrtcy.D.S.C.1983). However, the transaction here was not so straightforward; it involves, in part, a total satisfaction of an antecedent debt and, in part, an exchange of crops for cash. Our research discloses that when confronted with similar fact patterns, courts have sanctioned each of the three possible outcomes: (1) rejecting the defendant's claim to buyer in ordinary course status as to all parts of the transaction, *ITT Indus. Credit Co. v. H & K Mach. Serv. Co.*, 525 F.Supp. 170, 172 (E.D.Mo.1981); *Ray v. City Bank & Trust Co.*, 358 F.Supp. 630, 639 (S.D. Ohio 1973); (2) granting the defendant buyer in ordinary course status only as to that part of the transaction which involved a transfer of collateral for cash and denying such status as to the remainder of the transaction, a result known as "fractionalizing," *Walter E. Heller Western, Inc. v. Bohemia, Inc.*, 61 Or.App. 57, 67, 655 P.2d 1073 (1982); and (3) granting the defendant buyer in ordinary course status as to all parts of the transaction, *General Elec. Credit Corp. v. R.A. Heintz Const. Co.*, 302 F.Supp. 958, 963–64 (D.Or.1969).

Those parts of the commercial code pertinent to this issue were designed to protect the secured party by granting buyer in ordinary course status only to those giving new value in exchange for the collateral. *Handy and Harman*, 750 F.2d at 782. In this way the secured party is protected because the security interest, previously inhering in the collateral, will attach to the new value, which constitutes "proceeds" of the collateral. *See* Iowa Code § 554.9306(2) (1985). If the rule were otherwise and a transferee who received the collateral in satisfaction of an antecedent debt were granted buyer in ordinary course status, the potential would exist for an unsecured creditor, or a creditor with lesser priority—*i.e.*, the transferee—to bootstrap himself into priority over a creditor with an otherwise superior secured interest. *Handy and Harman*, 750 F.2d at

782; *Walter E. Heller Western*, 61 Or. App. at 64–65, 655 P.2d at 1077–78; *See* Iowa Code § 554.9307(1) (1983). These latter concerns obviously do not apply to collateral which was transferred in exchange for new value. As to these transactions, the secured party's position is no different from what it would be with respect to any other buyer in the ordinary course of business: the secured party's debt can be paid off by the proceeds, in which his security interest remains. *Walter E. Heller*, 61 Or. App. at 65–66, 655 P.2d at 1078; Iowa Code § 554.9306(2) (1983). We see no reason why, in cases such as the present one in which the two parts of the transaction are easily segregable, both these policies should not be effectuated. Accordingly, we adopt the "fractionalizing" concept.

Applying this concept to the present case, it readily appears that Percival Grain was a buyer in the ordinary course of business with superior rights in that portion of the collateral for which new value was given if the further qualification imposed by the Code and contested here by First State Bank was met: that Percival Grain received delivery of the collateral without knowledge of First State Bank's security interest. Iowa Code § 554.9301(1)(c) (1983).

Iowa Code section 554.1201(25) defines those situations in which a person has "notice" of a given fact. Subsection (c) of that section provides that "[a] person 'knows' or has 'knowledge' of a fact when he has actual knowledge of it." This "actual knowledge" standard applies to section 554.9301 notwithstanding pre-Code case law to the contrary. Iowa Code § 554.9301 comment 1(b). In the present appeal, First State Bank contends Percival had knowledge of First State Bank's security agreement with Zach because Percival had been served with a copy of First State Bank's foreclosure petition prior to the challenged transaction. Attached to the petition were copies of the pertinent security agreements. The sheriff's return of service was admitted into evidence at trial and is part of the record on appeal. That document states that Percival was served along with

Shirley Ag Service, Inc., a defendant dismissed prior to trial. Service was had on these defendants by delivering a copy of the original notice and petition to Ron Shirley. Ron Shirley is assistant manager of Shirley Ag Service. The record, however, does not establish that he has any employment-related connection with Percival Grain. Although Ron's father, Bobby Shirley, is an employee and officer of Percival Grain, Ron testified that his father was out of town when he, Ron, had been served with the original notice and petition. In addition, Ron stated that he had not brought the papers to his father's attention upon his return. Bobby denied having read the service papers or having any knowledge of First State Bank's security interest prior to the challenged transaction. The district court found that Percival Grain had no knowledge of First State Bank's security interest prior to the challenged transaction. This finding is supported by substantial record evidence, making it binding on appeal. Iowa R.App.P. 14(f)(1).

Consequently, we agree with the district court that Percival Grain was a buyer in ordinary course of business as concerns the $13,365.59 in crops the proceeds of which were distributed to Zach and co-payees Zach and Shirley Ag Service and that, as a result, First State Bank's security interest is subordinate to Percival Grain's rights. Iowa Code § 554.9301(1)(c). Percival Grain's status as a buyer in ordinary course does not extend, however, to those crops which were retained in satisfaction of Zach's antecedent debt.

## V. *Disposition.*

Our review persuades us the district court, in part, incorrectly applied the law to the facts of this case. We agree with the district court that Percival Grain was a buyer in the ordinary course of business with respect to the crops which Percival Grain received in exchange for cash and, as such, possessed superior rights in this collateral. In addition, we hold that Percival Grain's status as a buyer in the ordinary course does not extend to those crops which were retained in satisfaction of Zach's antecedent debt. However, we do not agree that First State Bank's security interests, which attached prior in time and were accordingly superior to Percival Grain's, *see* Iowa Code § 554.9312(5)(c) (1983), were waived by a prior course of dealing. Nor do we agree that the bank's security interest failed to attach to those crops harvested from the Zach farm because of the incorrect description of the collateral's location contained in the 1982 security agreement. Accordingly, First State Bank's superior security interest continued in that portion of the collateral which was retained by Percival in satisfaction of Jan Zach's antecedent debt.

First State Bank maintained a superior security interest in four-fifths of the crops grown on the Laird farm, amounting to $8,311.96, and on all crops grown on the Zach farm, amounting to $18,595.65. From this subtotal of $26,907.61, Percival Grain possessed superior rights in $13,603.60 as a buyer in the ordinary course of business. Accordingly, First State Bank maintained a superior security interest in $13,304.01 worth of the collateral. From this we subtract $237.02 which was attributable to miscellaneous charges associated with Percival Grain's processing of the grain transaction. This leaves First State Bank with $13,066.99 in secured collateral which was wrongfully converted.

We affirm that much of the district court's judgment which was based on its finding that Percival Grain was a buyer in the ordinary course of business to the extent of $13,603.60. We reverse the remainder of the judgment in favor of Percival Grain and remand this case with directions that the district court enter judgment in favor of First State Bank for the amount of $13,066.99.

Costs are assessed one-half to each party.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.