**Susan Brady RYERSON, Plaintiff–Appellee,**

v.

**FIRST TRUST AND SAVINGS BANK, Alan Levi, Rosemary Margulies, and Moe Whitebrook, Defendants–Appellees,**

**and**

**Ruth Strom Brady, Appellant,**

**and**

**Davenport Bank and Trust Company, Bruce Strom, Jacky Sinnykin, and Dee Dee Strom, Defendants.**

No. 87–71.

Supreme Court of Iowa.

Oct. 19, 1988.

Rehearing Denied Nov. 18, 1988.

Jeffrey S. Bittner and R. Richard Bittner of Carlin, Hellstrom & Bittner, Davenport, for defendant-appellee First Trust and Sav. Bank.

Ralph H. Heninger and Thomas J. Pastrnak of Heninger & Heninger, P.C., Davenport, for defendants-appellees Alan Levi, Rosemary Margulies, and Moe Whitebrook.

Herbert M. Spector of Spector, Tappa, Kopp & Nathan, Rock Island, Ill., and John T. Flynn of Brubaker, Flynn & Darland, P.C., Eldridge, for plaintiff-appellee Susan Brady Ryerson.

SNELL, Justice.

On October 1, 1982, Milo M. Brady established a Keogh plan, the trustee of which was the First Trust and Savings Bank of Davenport, Iowa. The documents constituting this plan were: (1) a basic plan document which contained all nonelective provisions applicable to all adopting employers, and (2) an adoption agreement which contained all options available to an adopting employer. Under the plan, Brady was the "Employer," the sole "Participant" and the "Plan Administrator." At the time the plan was established, Brady was married to appellant Ruth Strom Brady. Appellee Susan Brady Ryerson is Brady's daughter by a former marriage. Under the plan, Brady retained the right to designate beneficiaries of his death benefits. On February 20, 1984, Brady listed appellees Ryerson, Levi, Margulies and Whitebrook as his beneficiaries. He subsequently attempted to modify these designations on an undated document, ostensibly adding appellees Jacky Sinnykin, Bruce Strom and Dee Dee Strom as beneficiaries.

In 1984, Congress passed the Retirement Equity Act (REA). This new legislation required that in order to remain qualified for preferential tax treatment under section 401 of the Internal Revenue Code, plans such as Brady's would need modification. First Trust and Savings Bank retained counsel to accomplish these modifications. Copies of the modified documents were sent to First Trust as well as to the

Lynn W. Dippold of Stanley, Lande, Coulter & Nepple, Muscatine, for appellant.

Internal Revenue Service in December 1984. Brady, vacationing in Florida, was sent a copy of the new adoption agreement but was not sent a copy of the basic plan document. Shortly thereafter, Brady mailed the agreement back to First Trust. Although Brady designated all available options, he signed the agreement in the wrong space and omitted to date it.

Brady died on May 4, 1985. The value of his Keogh plan account is approximately $200,000. The October 11, 1985, filing of Ryerson's petition for declaratory judgment initiated the flurry of motions, cross-claims and counterclaims which compose the record in this case. At issue in this appeal is the validity of Brady's amended and modified Keogh plan. The district court concluded that Brady's adoption agreement designations and signature were not effective to amend his plan. The court, therefore, held that the amended plan was not in effect on the date of Brady's death and divided Brady's account among his widow, appellant here, and his beneficiaries under the 1982 plan as effectively amended by the REA. This appeal followed. As this action was filed at law, our review is limited to the correction of legal errors. *Sanders v. Ghrist*, 421 N.W. 2d 520, 521 (Iowa 1988); *Junkins v. Branstad*, 421 N.W.2d 130, 135 (Iowa 1988); *First State Bank v. Shirley Ag. Serv.*, 417 N.W.2d 448, 450 (Iowa 1987); *see* Iowa Code § 624.2 (1985).

■ As an initial matter, it is clear the bank, as trustee, possessed the authority to amend the plan without Milo's approval. The Employee Retirement Income Security Act (ERISA) requires that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). The plan must also "provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan...." 29 U.S.C. § 1102(b)(3). Under Brady's original 1982 plan the bank, as trustee, reserved the right to make amendments and modifications to the plan and to make retroactive such changes as may be "required to secure ... continued approval

of the Plan and Trust by the Commissioner of Internal Revenue or his delegate under the Internal Revenue Code." The rights and interests of all persons affected by the plan were expressly made subject to such amendments.

■ In *Henne v. Allis–Chalmers Corp.*, 660 F.Supp. 1464, 1473–75 (E.D.Wis.1987), former employees argued that amendments to an employee welfare benefit plan, subject to ERISA, were inoperative due to the failure of the plan's administrator to inform them of the amendments. Noting that the original plan reserved to the administrator the right to modify or amend the plan without notice, the court concluded that the amendments were valid notwithstanding the lack of notification. *Id.* at 1475. Such amendments, made pursuant to plan procedure and grant of authority, are valid absent violation of ERISA directives. *Serb v. Gagnier Products Co. Pension Plan & Trust*, 658 F.Supp. 6, 7 (E.D.Mich.1986); *see Wilson v. Bluefield Supply Co.*, 650 F.Supp. 578, 581–82 (S.D. W.Va.1986); *District 65, UAW v. Harper & Row, Publishers, Inc.*, 576 F.Supp. 1468, 1481 (S.D.N.Y.1983); *Morales v. Plaxall, Inc.*, 541 F.Supp. 1387, 1389–91 (E.D.N.Y. 1982). Relatedly, we note it is the duty of the plan administrator, and not that of the trustee, to furnish plan participants with summaries of material plan modifications. *See* 29 U.S.C.A. § 1022(a)(1), 1024(b)(1). Brady was the administrator of his 1982 plan.

■ The 1984–85 modifications were clearly designed to conform the bank's plan to the requirements of federal legislation. We recognize the exercise of the bank's right to amend the plan was conditioned upon sixty-days' written notice to the employer, Brady. Clearly, however, Brady waived that condition when he signed and returned the adoption agreement. Moreover, no party to this appeal challenges the validity of the substantive modifications to the plan documents. Rather, at issue here is whether, given those modifications, Brady's signature and designation of options on the returned adoption agreement effectively engrafted the effects of those

amendments onto his plan. The determination of the legal effect of Brady's acts, which are undisputed, is not a question of fact, but one of law. *Bell v. Ralston Purina Co.*, 257 F.2d 31, 32 (10th Cir.1958); *Associated Tabulating Serv. Inc. v. Olympic Life Ins. Co.*, 414 F.2d 1306, 1310 (5th Cir.1969); 17A C.J.S. *Contracts* § 611 (1963).

With respect to the plan amendments themselves Brady, in his capacity as the plan participant, need look to the plan administrator, here himself, for notification of plan modifications. Moreover, no such notification need be given until the modification is implemented. *See Henne*, 660 F.Supp. at 1475; *Sleichter v. Monsanto Co.*, 612 F.Supp. 856, 859 (D.C.Mo.1985); 70 C.J.S. Pensions § 32 at 153 (1987). In his capacity as the plan administrator, it was Brady's "sole responsibility and authority to ... interpret the Plan and to determine all questions arising in the course of administration...." In his capacity as the employer under the plan, Brady's rights were limited to sixty-day notice of plan amendments, a right which is clearly not dispositive of the present case. The Bank amended the plan pursuant to its authority. Brady was sent the adoption agreement not for his approval of the amendments—which was not needed—but for his designation of elective options, which he made. It was his duty to understand these options and nothing in this record suggests that he did not.

The district court's decision that Brady's designations were not effective was premised upon its belief that Brady was not informed prior to signing the adoption agreement of certain changes made in the plan pursuant to the requirements of the REA. The court thought this premise clear from the fact that Brady's signature, if signifying his designation of options under the amended plan, would have given his wife an automatic annuity valued at one hundred percent of his plan, notwithstanding the earlier beneficiary designations. As the court did not believe this to be "the act of an informed and cautious man," it concluded that Brady's designations were only tentative, pending IRS approval of the plan's form.

The August 1984 enactment of the REA amended ERISA to require that in order to remain qualified under section 401 of the Internal Revenue Code, plans must provide that a participant's surviving spouse is to receive benefits under the plan following the participant's death, unless the spouse executes a waiver. These benefits are known as qualified preretirement survivor annuities (QPSA) 29 U.S.C. § 1055(e) (1985). An exception to this requirement, however, provides that plans such as Brady's need not provide survivor annuities if

> such [a] plan provides that the participant's nonforfeitable accrued benefits is payable in full, on the death of the participant, to the participant's surviving spouse (or, if there is no surviving spouse or the surviving spouse consents in the manner required under subsection [§ 1055] (c)(2)(A) of this section, to a designated beneficiary)

29 U.S.C. § 1055(b)(1)(C)(i). *See also* 26 U.S.C. § 401(a)(11)(B)(iii)(I).

It is clear, and undisputed, that Brady intended that his plan qualify for preferential tax treatment. Testimony shows that Brady was a person very concerned with minimizing his federal income tax liability. He frequently called and wrote his accountant concerning ways to minimize his tax by maximizing his Keogh plan contribution. Equally clear is the fact that, absent the validity of the adoption agreement, his plan would have lost its qualifying status as of January 1, 1985. Section 302 of the REA makes the provision of a QPSA or an exception thereto a requirement applicable "to plan years beginning after December 31, 1984." Brady's relevant plan year began on January 1, 1985. Brady's 1982 plan would not qualify for preferential tax treatment under the REA requirements as it provided for neither a QPSA nor for an exception to that requirement.

The adoption agreement signed by Brady in early 1985 indicated, by way of his checkmark, that the plan's survivor annuity provisions were to be applicable only to the extent required by law. Under Brady's

circumstances, such a designation resulted in the provisions being not applicable to his plan. A separate portion of the new basic plan document provided that if this designation is made and the pertinent plan is a profit sharing plan, as the record discloses Brady's always was, a married participant's preexisting beneficiary designations were invalid after December 31, 1984, absent spousal consent. As the consent of Brady's spouse was neither secured nor sought, Brady's beneficiary designations were nullified. The effect of this nullification is that Brady's entire accrued benefit is payable to his surviving spouse, appellant Ruth Strom Brady. The 1985 plan, therefore, as a result of Brady's elections, qualified for the exception to the survivor annuity requirement. Consequently, the 1985 plan, consistent with Brady's intentions, remained qualified for preferential tax treatment.

█ Consequently, and contrary to the district court's conclusions, Brady's amended plan does not grant his wife a qualified preretirement survivor's annuity. Rather, his wife receives the death benefits in cash because of the nullification of the beneficiary designations. Such a result was envisioned by Congress when it enacted the REA. In *Binks Manufacturing Company v. Casaletto–Burns*, 657 F.Supp. 668, 671 (N.D.Ill.1986), the court dealt with a fact situation substantially identical to that involved here. In *Binks*, the decedent's profit sharing plan, rather than providing for a survivor's annuity, provided that the surviving spouse was to receive all amounts payable under the fund. Prior to 1985 plan amendments effecting this change, the decedent's 1984 beneficiary designations were effective. Although the amendments effectively divested the beneficiaries of that status, Congress "expected designated beneficiaries to give way to the surviving spouse" in cases of this type. *Id.* The court stated:

> The law is that a surviving spouse is entitled to the proceeds of a benefit plan or an individual account (contribution) plan unless she or he consents to another named beneficiary. The fact that the Fund eventually used one avenue of com-

pliance with the Retirement Equity Act over another should not change the outcome for the surviving spouse.

*Id.*

Similarly here, Brady's plan was designed to qualify for preferential tax treatment not by providing for a QPSA but, rather, by providing that its accrued benefits were to be payable to appellant upon Brady's death. This is the clear implication to be drawn from Brady's designation of options contained in the adoption agreement which he signed and returned to the trustee bank. Brady did not sign the 1985 adoption agreement on the line designated "Employer," nor date it, but did sign the agreement on its last page in a space following the typed word "accepted" and opposite a line for signature above the typed words "First Trust and Savings Bank" "Trustee." The district court's conclusion that this indicated Brady's intent to postpone his designation of options was based on the court's premises that the 1982 adoption agreement was "complete in every respect, every 'i' dotted and every 't' crossed," and that "[i]t could be expected [that] any change initiated by [Brady] would be as complete." The record discloses, however, that the 1982 agreement, while dated, was not signed in the appropriate space either. In any event, this court long ago noted the insignificance of a signature's location. *See Wise v. Ray*, 3 Greene 430, 431 (Iowa 1852).

Since appellant is entitled to judgment in her favor as a matter of law, we reverse and remand for entry of judgment in accordance herewith.

REVERSED AND REMANDED.

All Justices concur except SCHULTZ, J., who dissents, and CARTER and NEUMAN, JJ., who take no part.

SCHULTZ, Justice (dissenting).

The trial court found that decedent did not intend to change his designation of beneficiary. I believe this was a finding of fact which was supported by substantial evidence. The majority opinion wrongly concludes this was a legal conclusion which

we may change on appeal. I would affirm the trial court.